JOSEPH W. PRATT

*v.*

HOWARD WORRELL, administrator, &c., et al.

[Filed March 7th, 1904.]

1. A testator devised an estate for life in his Westville property to his widow, with an independent power to sell it and to appropriate the proceeds to her own use. He devised the residue of his estate (including the Westville property) to his executor, in trust, and ordered him, on the death of the widow, to sell that property (if she should not in her lifetime have chosen to sell it) and to divide the proceeds among his named relatives. The executor attempted to sell the property during the life of the widow and to hold the purchase-money for the benefit of the widow.—*Held*, the effect of the will was to create two succeeding powers of sale, one of which might be exercised during her life by the widow for her own benefit, the other after her death by the executor for the benefit of others. The executor had no power to sell during the life of the widow, and he could not, under any circumstances, exercise his power of sale for the benefit of the widow, even by her consent, for the will directs that it be used, not for the widow, but for the benefit of the testator's relatives.

2. The executor's deed recited as his authority to sell a power given him in the will to "sell and dispose of any of the 'securities'" the testator might hold at his death. This power to sell securities did not authorize the executor to sell the Westville lands. The executor's attempted conveyance was void.

3. The executor's void deed had no effect to convert the equitable interest of the legatees in the property. He cannot compel them to interplead with the widow's representatives as to their contesting claims upon the purchase-money paid for that deed.

4. If, on the face of a bill seeking an interpleader decree, it appears that other parties than those made defendants have a right to be heard regarding the fund in dispute, an interpleader will not be decreed.

5. If it appears that the complainant, with respect to the fund in dispute, has entered into an independent contract with one defendant, in which the other defendant has neither part nor interest, an interpleader will not be decreed.

On bill, answer and proofs.

Pratt *v.* Worrell.

The bill is filed by J. W. Pratt, who is the executor and trustee under the last will of David Bowers, a copy of which is in the words and figures following:

"I, David Bowers, of sound and disposing mind and memory, for which blessing I thank Almighty God, do make and publish this, my last will and testament, this eleventh day of April, anno domini, eighteen hundred and eighty-five.

"I order and direct all my just debts and funeral expenses be fully paid and satisfied as soon after my decease as can conveniently be done by my executor.

"I give, devise and bequeath unto my beloved wife, Hannah Bowers, all my household goods and wearing apparel, also the use, rents and profits of my house and lot at Westville so long as she may live, or should she desire and select to sell the same at any time I hereby give her full power and authority to sell and convey the same and appropriate the proceeds to her own use.

"I give, devise and bequeath unto my executor hereinafter named all the balance of my estate, real and personal, *in trust* for the following purposes:

"To collect the rents, issues and profits of the same and pay over the same to my wife, Hannah Bowers, for and during her natural life, and I hereby give full power to my executor to sell or dispose of any of the securities that I may hold at the time of my decease whenever he may deem it to the best interest of my estate and invest the proceeds in first bond and mortgage securities.

"Upon the death of my said wife I order my executor to convert my estate into cash and also to sell and convey the house and lot at Westville, should my wife not have selected to sell it in her lifetime, and out of the amount of all my estate I direct my executor to pay to John Bowers (who claims to be my grandson) the sum of five dollars, and the balance I order and direct to be equally divided between my nephew David Bowers, my grandnephew David Bigley, and my niece Mary Bigley, share and share alike.

"I hereby nominate and appoint Joseph W. Pratt to be the executor and trustee of this my last will and testament.

"DAVID BOWERS.  [L. S.]

"Signed, sealed, published and declared by the said David Bowers to be his last will and testament in the presence of us, who at his request and in his presence, and in the presence of each other, signed our names as subscribing witnesses.

"ISAAC P. KNISELL.<br>"H. C. LOUDENSLAGER."

The will was proven on the 20th day of September, 1886, be-

fore the surrogate of Gloucester county by the complainant, who undertook the burthen of the administration of the estate of the decedent.

Hannah Bowers, widow of the testator, David Bowers, departed this life on the 21st day of January, 1899.

The bill of complaint alleges that in the month of June, 1888, Hannah Bowers requested that the house and lot at Westville, New Jersey, be sold by the complainant, executor and trustee under the will of David Bowers, and the proceeds thereof invested as part of his estate and the income thereof paid to her. That, in pursuance of the expressed wish of Hannah, the complainant, on the 28th day of June, 1888, by deed, as executor of David Bowers, granted the premises to Philip A. Mason and Anna Eliza Mason, or the survivor of them, for the sum of $1,140, which sum has since and still remains in the complainant's hand as executor and trustee of David Bowers, the interest thereof having been regularly paid to the said Hannah Bowers during her life.

That coincidently with the making of the deed to Philip Mason and Anna Eliza Mason, or the survivor of them, Hannah Bowers executed and delivered to Philip A. Mason and Anna Eliza Mason, or the survivor of them, an instrument in writing whereby she released and quit claimed unto them of all manner and right of action of dower which she might have or claim in the premises conveyed, which instrument is recorded in Gloucester county clerk's office. That said Hannah Bowers died intestate in Philadelphia, and letters of administration upon the estate whereof she died possessed were granted on the 25th day of September, 1899, to one Howard Worrell, who undertook the administration of her estate; that on July 11th, 1900, said Howard Worrell, administrator as aforesaid, brought an action on contract in the supreme court of New Jersey against the complainant for said sum of $1,140, so by the complainant received from the sale of the house and lot at Westville. That the suit in question was not brought against the complainant in his capacity as executor and trustee under the will of David Bowers but against him personally and in-

Pratt v. Worrell.

dividually. The complainant filed several pleas to said suit and the cause has been noticed for trial at the Gloucester circuit.

That Mary Bigley, mentioned in the will of Bowers, has since intermarried, and her present name is Mary Maher. That Mary Maher, David Bigley and David Bowers, residuary legatees under the will of David Bowers, have notified the complainant that they deny the claim of Howard Worrell, administrator, &c., of Hannah Bowers, deceased, to the said sum of $1,140, and insist that it is part of the estate of David Bowers, and that they are entitled to distributive shares thereof.

The complainant avers that he cannot safely determine which of these conflicting claimants is rightfully entitled to the said sum of $1,140; that he is willing to pay it to whomsoever is rightfully entitled to receive it, and proffers himself ready to pay it into this court. The bill contains the usual averments of non-collusion and non-indemnification, &c., and, making defendants Howard Worrell, administrator of Hannah Bowers, deceased, Mary Maher, David Bigley and David Bowers, prays that Worrell may be restrained from prosecuting his suit at law against the complainant; that the complainant may be permitted to pay the $1,140 into this court, and that the defendants may be decreed to interplead touching the claims upon the same, and the complainant be dismissed from further responsibility in the premises.

The sum of $1,216 (the amount of the $1,140 and interest) has been deposited in court and an injunction has been issued restraining the defendant Worrell from prosecuting his suit.

The defendant Howard Worrell, administrator of Hannah Bowers, files his answer, denying that the complainant holds the $1,140 as either executor or trustee under the will of David Bowers, deceased; on the contrary, he avers that the complainant held the same as the property of Hannah Bowers during her lifetime, and that since her death it is part of her estate, which her administrator is entitled to receive. He further alleges that Hannah Bowers, in her lifetime, desired to sell and convey the house and lot at Westville in pursuance of the power of sale conferred upon her by the last will of David

Bowers and to appropriate the proceeds thereof to her own use; that she requested the complainant to find a purchaser for the property; that he found such purchaser in Philip A. and Anna Eliza Mason for the price of $1,200; "that it was supposed by both said complainant and Hannah Bowers that, in order to convey title thereof to said purchasers, it would be necessary for said complainant to make a deed therefor as executor of David Bowers, deceased, to said purchasers, and for said Hannah Bowers to release all her right of dower therein to said purchasers."

That thereupon, on June 28th, 1888, the complainant, as executor, conveyed said house and lot to Philip A. and Anna Eliza Mason, or the survivor of them, for said sum of $1,200, and at the same time Hannah Bowers released her right of dower therein to the purchasers.

The answer further claims that Mason and wife paid the purchase-money of the sale to the complainant, as agent for Hannah Bowers; that the complainant then deducted from the purchase-money $60 as commissions for making the sale and paid the balance, $1,140, to Hannah Bowers; that Hannah then returned the $1,140 to the complainant with directions to invest the same for her benefit; that the complainant took the money and since that time it has been in his personal possession and control; that he paid the interest thereon to Hannah Bowers up until the 28th day of June, 1898, and until her decease always treated the said sum as belonging to her and not as a portion of the estate of David Bowers, deceased.

The defendants, Mary Maher, David Bigley and David Bowers, jointly answer the bill of complaint. They admit that Hannah Bowers requested that the house and lot be sold by the complainant, executor and trustee under the will of said Bowers, and the income thereof paid to her, and that, in pursuance of her wish, the complainant, as executor as aforesaid, sold and conveyed the property to the Masons, and that the proceeds therefrom, $1,140, have since remained in the complainant's hands as executor and trustee under the will of David Bowers, and still so remain, the interest therefrom having been paid to the said

Pratt *v.* Worrell.

Hannah Bowers.  The defendants, Maher and others, admit that Hannah Bowers gave to the Masons the instrument releasing her dower in the property conveyed.

They deny the right of Howard Worrell to the proceeds of the sale as administrator of Hannah Bowers, deceased, and insist that the said money is part of the estate of David Bowers, deceased, which they are entitled to receive as residuary legatees.

No decree of interpleader has been made.  The cause was heard on issues joined by the complainant on the answers of the defendants.

*Mr. Robert S. Clymer,* for the complainant.

*Mr. Joseph J. Summerill,* for Howard Worrell, administrator, &c., defendant.

*Mr. Robert C. Sparks,* for Mary Maher and others, defendants.

GREY, V. C.

The first question to be determined under the pleadings is whether the complainant has any right to a decree that the defendants shall interplead touching the sum of money in his hands.

It is undisputed that upon the death of the testator, in 1886, his widow, Hannah Bowers, had the enjoyment of the Westville property until it was conveyed to Mr. Mason and his wife, in 1888, by the complainant as hereinafter named.

It is also undisputed that the complainant received the moneys for which the several defendants are contending as the purchase-money for the conveyance by the complainant of the Westville property to Philip A. Mason and wife by a deed, made by him on the 28th day of June, 1888, here produced in evidence.  The deed purports to have been made by the complainant as the executor named in the last will of David Bowers, and recites the power given in that will to sell the testator's "securities."  The manner in which the fund in the hands of

the complainant (touching which interpleader is sought) came into being is therefore undisputed. The documentary proofs and the uncontradicted parol testimony are in substantial accord on this point.

The complainant was the executor of the last will of David Bowers, who, it is admitted, died in 1886, seized of an estate in fee in the house and lot, spoken of in this cause as the Westville property. By his will, David Bowers· devised the "use, rents and profits" of the Westville property to his wife "so long as she may live," &c. The legal effect of this devise was to vest in the widow an estate for life in the land itself. *Diament* v. *Lore, 2 Vr. 220; Den* v. *Manners, Spenc. 142.*

The will, in the same paragraph which contain's the devise of the Westville property to the wife for her life, gave her a power to sell that property in these words: "Should she desire and select to sell the same at any time, I· hereby give her full power and authority to sell and convey the same and appropriate the proceeds to her own use."

Under the decisions in this state this power to sell did not enlarge the widow's life estate into a fee. The court of appeals, in the leading case of *Downey* v. *Borden, 7 Vr. 460,* declared that where the quantity of the estate devised is expressly for life, with a power of disposition annexed, only a life estate passes to the devisee and the superadded words will be construed to be a mere power. See, also, *Pratt* v. *Douglas, 11 Stew. Eq. 518; Wooster* v. *Cooper, 8 Dick. Ch. Rep. 683; Benz* v. *Fabian, 9 Dick. Ch. Rep. 615.*

The testator devised the rest of his real and personal estate to the complainant, his executor, in trust for certain named purposes. This devise carried the fee-simple estate of the Westville property to the executor in trust for the purposes named in the will.

The first purpose of the trust is by the will declared to be to collect the rents, issues and profits of the same and pay them over to the widow during her natural life. This trust was necessarily futile. The testator had already, by his will, by direct gift, devised to his widow a life estate in the Westville

property, which entitled her to the possession and ejoyment of the premises during her life. The estate devised to the executor was a residue remaining after taking out the widow's life estate. The executor's estate began in enjoyment and possession at the termination of the widow's life estate. The executor had no right to the possession of the premises during the widow's life, and therefore could not collect any rents, or pay them over to her during her life. The trust to collect rents and pay them over to the widow during her life was therefore void *ab initio,* because impossible of execution.

The will also gives to the executor power to sell or dispose of any of the "securities" that the testator may hold at the time of his decease. The terms of the will expressly limit this power to the sale of "securities." No meaning can be given to the word "securities," as here used, which would declare it to mean "land." The power to sell "securities" cannot be construed to enable the executor to sell the testator's real estate. The testator, in terms, orders the executor to sell and convey the Westville property as one of the trusts upon which the residue was devised to him. The testator directs the executor to perform this trust after the happening of a certain event, and that he should distribute the purchase-money arising from his sale among certain named persons. The testator's directions, specifically applicable to a named piece of property, cannot be defeated by selling that property under another and general power, applicable to another class of property, and created for other purposes. The attempt of the executor to sell the Westville property as a "security" is therefore a nullity.

The direction that upon the death of the widow the executor should convert the whole estate into cash, and "sell and convey the house and lot at Westville, should his wife not have selected to sell it in her lifetime," plainly indicates that the testator intended that his executor should sell the Westville property only after the death of his widow, and only in case she had not chosen to sell it in her lifetime. This construction accords with the obvious intent of the testator, as expressed in the whole will. He creates two separate and succeeding powers; one to be exer-

cised by his widow in her lifetime, the other by his executor under the trust after the death of the widow. The power given to the widow was intended by the testator to afford her an opportunity, should she desire to exercise it, to sell and convey the property in question in her lifetime, and to take to herself the purchase-money which might arise from such a sale. It is equally apparent that the trust power requiring the executor to sell and convey after the death of the widow was intended to be used to divide his estate among his legatees, and was not to be exercised until after the widow's authority to sell should have expired by her death. These two powers were intended to be successive and not coincident in the time of their exercise, and to be used for purposes which were distinct each from the other, and for the benefit of different persons who are wholly unrelated.

That such a trust power as is given to the executor in this will should not be exercised until after the death of the widow is, I think, entirely clear. Sir Edward Coke laid it down as a general rule that where there is a devise for life to A, and a direction that after his decease the estate shall be sold, the exercise of the power must await the decease of A. *Coke Litt. 113 a.* Lord Hardwicke, in *Uvedale* v. *Uvedale, 3 Atk. 117,* interpreting a will then before him, said the words "after her decease" were not put in to postpone the sale, and in view of the special circumstances of that case ordered a sale. His decision has been referred to as leaving a doubt on the point. *Sugd. Pow. *334.*

It is quite clear that whenever a power of sale is given by will the determination when it shall be exercised must depend upon the intent of the testator as expressed in that will. Each case must therefore be settled by the terms of the particular will under which the question arises. If the testator intended the sale to be postponed until after the death of the widow, it must be held that the donee of the power could not exercise it until the time had arrived when the testator intended he should.

In the making of the will now under consideration, the testator had in consideration (as above stated) two separate and succeeding powers—one to be exercised by his widow in her life-

time for her own benefit, and the other by his executor after her death for the final settlement and distribution of his estate, in which the widow had no share. Both the times prescribed for the exercise of these two powers, and the purposes for which they were to be used, show that they were intended to be successive. The testator conferred no power on the executor to sell until the widow's authority to sell should have expired by her death. In such a case the period of limitation is of the essence of the power and the executor must observe it; and if he does not, his deed, made in the lifetime of the widow, must be held to be a nullity. *Booraem* v. *Wells, 4 C. E. Gr. 88.*

In the case of *Snell* v. *Snell, 11 Stew. Eq. 125,* the principle that the intent of the testator (as to the time when a power of sale shall be exercised) must govern was fully recognized, although a sale was permitted in the lifetime of the life tenant. In that case there was a devise of a life estate to the widow, with remainder to the executors, and direction that after the widow's death they should convert the property into cash, and divide the cash among children when the youngest should have attained the age of twenty-five years. Chancellor Runyon held that with the widow's consent and release of her life estate to the purchaser, the executor could sell in her lifetime. That the phrase "after her death" (referring to the widow) meant upon or after the termination of her life estate, whether by death or otherwise. The chancellor has himself injected an element of doubt into his decision, for he says that "the possibility that the widow might desire to part with her interest in the property before her death was not contemplated by the testator, and it seems clear that had he contemplated it he would have provided for the sale of the property by the executor and her together, or by them with her consent." He then proceeds to give to the power by construction the effect which he says the testator would have given it had he considered the matter. It is difficult to see how a court can ascribe to a power given by a will, an effect which the testator never contemplated it should have. The *Snell Case,* whether well determined or not, differs radically from the case at bar, for here the testator, in creating two

distinct and successive powers of sale, did contemplate that the widow might desire to part with her interest in the property before her death, and prescribed a mode by which that might be accomplished, which mode, the documentary proofs conclusively show, was not pursued. The executor's deed to Mason and wife must be held to be void, because the executor, during the lifetime of Hannah Bowers, had no power to make any conveyance of the premises.

Hannah Bowers (the widow) did not join the executor in making his deed, nor did she by any writing assent to or approve of it. She did, however (coincidentally with the making of the executor's deed), execute and deliver to Mason and wife a release of her supposed dower interest in the Westville property. The consideration named is $1. The operative words of her conveyance are "remise, release and forever quit claim unto the said Mason and wife all manner of dower and right of action of dower," &c. The widow's release of dower refers to the executor's deed as made coincidentally with the release, but contains no words which could be held to be an exercise by the widow of her power to sell under the will.

Nothing in this release of dower refers in any way to any power which the widow might have to sell the property described in her release, or to any estate for life in the entirety of the property which she held by devise under her husband's will. No writing of any sort, signed by Hannah Bowers, attempts in any way to execute the power given to her in David Bowers' will.

This supposed release of dower is another instance of the fatuous conveyancing which attended the disposition of this property. When it was made by Hannah Bowers, she had neither right nor estate of dower in this Westville property. The sixteenth section of the Dower act declares that where a husband devises lands to his wife, for her life or otherwise, she shall not be entitled to dower in any lands passing by his will unless she refuses to accept the devise to herself within six months after the probate of her husband's will. *Gen. Stat. p. 1278.* In this case Hannah accepted her husband's devise of a life

estate to herself without dissenting; she therefore had no dower interest to release, and the paper she executed and delivered to the Masons discharged no claim of dower.

At the time when Hannah Bowers made this supposed release of dower she had an estate for life in the entirety of the premises referred to in the release, and might have conveyed that estate. She also might, had she chosen to do so, have exercised the power to sell and convey those premises given her by her husband's will, and have appropriated the proceeds to her own use. In fact, she did neither of these things. Her release of her supposed dower right did not pass her life estate in the premises, nor did it execute the power given her by her husband's will. Nor does it in any way indicate any intention on her part either to convey her life estate or to execute that power. The instrument which Hannah Bowers executed and delivered to the Masons was therefore a nullity. It did not undertake to convey her life interest in the entirety, or to exercise the power given to her by the will, nor did not operate as a release of dower. In truth, it changed no one's relation to the property with which it assumed to deal.

The result is that neither of the two powers created by David Bowers' will has been so exercised that under it title to the premises in question passed to Mr. Mason and his wife. The equity of Hannah Bowers, if she sold in exercise of her power in her lifetime to appropriate the proceeds to her own use, remained unexecuted after the deed to Mason and wife had been made. The equity of the residuary distributees to have the executor sell for their benefit also remained unexecuted. The whole transaction failed—on the part of the executor for want of power to act at the time he acted, and on the part of the widow because she never even attempted to act.

The complainant in this suit mistakenly assumes that by the exercise of one or the other of those powers a good title has been conveyed to Mason and wife, and that the purchase-money paid by them belongs to the persons who may be entitled under either one or the other of these powers. All the defendants accept the theory that an efficient conveyance of the premises

has been made to Mason and wife, and that the only question to be settled is who is entitled to the purchase-money.

The answer of the defendant Worrell, the administrator of the widow, declares that she desired to sell and convey the property, under the power conferred by the will, and to appropriate the proceeds arising therefrom to her own use, and requested the complainant (the executor) to find a purchaser, and that the complainant thereupon found the Masons as purchasers, for the price of $1,200. That both the executor and the widow supposed that to pass the title to the property the executor should convey to the purchaser by deed made as executor, and that the widow should release her right of dower.

Neither the deed nor the release of dower, nor any other writing produced in evidence, contains the slightest indication that Hannah Bowers ever intended to exercise the power to sell given to her by the will. No parol proof, even, attempts to show that she ever had such a purpose. The executor's deed, by its express words and by every inference that can be drawn from it, indicates that it was under the executor's power to sell "securities" that his deed was made. The deed would, of course, have been no better conveyance if it had recited in terms the executor's power to sell after Hannah's death, for Hannah was alive when it was made, and that power, as above shown, could not have been exercised during her life.

When the executor's deed and the release of dower were made to Mason and wife, all of the parties who then acted—the executor, the widow and Mr. Mason and his wife—executed and delivered and accepted those instruments and paid and received and dealt with the purchase-money upon the assumption that the executor, under the power to sell "securities," had authority, in the widow's lifetime, to convey the Westville property; whereas, as is above shown, he had no such power, and the supposed conveyances to the Masons were wholly inoperative and void.

The complainant in the present suit, under this false impression of the legal effects of the transaction above narrated, seeks to compel the representative of the widow of David

Bowers, and the residuary legatees under David Bowers' will, to interplead regarding the disposal of the purchase-money which the Masons have paid for a void conveyance. The complainant has so framed his bill of complaint that the rights and equities of Mason and his wife, who paid the whole of this purchase-money and got no legal title to the property apparently conveyed to them, have not been presented and cannot be considered. They are not parties to this suit. A mere interpleader suit by the executor cannot present their equities. What their relation may be to the purchase-money, still in the hands of the executor, has not been disclosed. Whether the payment by Mr. Mason and his wife was induced by such a mistake as may be corrected, or by fraudulent misrepresentations or other incident which may equitably entitle them to the return of the purchase-money, or to a new and effectual exercise of the executor's power of sale, has not been and cannot be shown in this case. It does appear that, however Mr. Mason and his wife may have been induced to pay the purchase-money to the executor, they got no title for it, and at the time they paid it, could not have had from the executor any title, because he then had no power to sell.

Whoever else may have been at fault in creating this confusion, the executor was certainly the chief actor in the transaction. By his present bill he seeks to protect himself, but gives Mr. Mason and his wife no opportunity to be heard. If an interpleader decree is made, the Masons' purchase-money will be contended for between the defendants to this suit, to which the Masons are not parties, and they may also lose the property which they thought they had purchased, by a new exercise of the executor's power after the widow's death, in the interest of the residuary legatees.

Where the undisputed facts in a bill for interpleader show that other persons who are not made defendants have rights or equities in the fund in dispute, a decree of interpleader ought not to be made.

In this case it was the complainant's own misconduct which led to the dispute touching the sale and conveyance of the West-

ville property.   He ought not to be allowed to dispose of that fund without enabling all parties who may be interested in it to be heard.

Another ground which disentitles the complainant to an interpleader decree is the fact that the undisputed evidence shows that when the purchase-money was paid in cash by Mason and wife to the complainant executor, he actually delivered it to Mrs. Bowers, saying "here is your money;" that she handed it back to the complainant and told him to invest it.   The complainant took it and said he would see that it was properly invested and she would get the interest of it.   Though he did not invest it as a separate and distinct fund, he actually paid Mrs. Bowers interest on the money twice a year during her life, up to her death in 1899.   The purchase-money was paid in 1888, so that these interest payments by the complainant to Mrs. Bowers continued through eleven years.

By this manner of dealing with this money the complainant appears to have acknowledged that the fund in dispute is held by him to produce an income for Mrs. Bowers.   From this point of view the complainant, with respect to this money, entered into an independent undertaking with Mrs. Bowers; he agreed to receive and invest her money.   This appears to have been a transaction between the complainant and Mrs. Bowers only, subsequently to the payment of the purchase-money.   In such a case there is no equity entitling the complainant to an interpleader decree.   He has acknowledged an independent liability to one defendant in which the other has no interest.   *Pom. Eq. Jur. \*1326; Mount Holly Turnpike Co. v. Ferree, 2 C. E. Gr. 117.*

For the reason that no sufficient inquiry can be made in this suit into the equities of all the parties interested in the payment, the receipt and the disposition and ultimate distribution of the purchase-money of the Westville property, and because the complainant appears to have entered into an independent liability to one defendant with respect to the moneys in dispute, in which the other has no interest, the complainant's bill must be dismissed.