## In the Matter of the Estate of Cornelius Vanderbilt, Deceased.

Surrogate's Court, New York County, April 30, 1928.

Executors and administrators — accounting — will gave executors and trustees $20,000,000 in securities with direction that they be set apart at their market value, divided into four parcels and held in trust for each of four children designated — testator did not intend that executors and trustees should reject stock in making up trusts and include bonds only — trustees were not required to immediately sell shares of stock composing trust — trustees should not be surcharged for purchasing new stock under so-called rights to subscribe to new stock extended by corporations of which estate was stockholder — estate of life tenant is not entitled to allowance of commissions where will specifically provides that no compensation or commission shall be paid to any executor or trustee for services.

On this proceeding for the judicial settlement of the account of trustees of a testamentary trust fund amounting to $5,000,000, it appears that the testator gave to his trustees $20,000,000 in securities held by him at his death to be selected out of his estate and set apart at their market value by his executors, then divided into four parcels and held in trust for each of four children. The account covers the term of administration from the death of the testator in 1899 to the death of the life tenant in 1925. The latter left surviving him as his issue two daughters, in each of whom, on his death, vested one-half of the fund. One of the daughters has accepted the securities turned over to her, but the other has filed objections to the account, while the estate of the life tenant demands that commissions be allowed upon transactions during the period in which the life tenant acted as cotrustee of the estate.

Since the language of the will evidences a clear intention on testator's part that the specific shares of stock left by him might be retained by the trustees as long as they thought best, there is nothing to warrant a finding that he intended his executors and trustees should have rejected shares of stock in making up the trusts and included bonds only.

The fact that the will conferred upon the trustees discretionary power of sale and imposed restrictions on the investments, did not require them to immediately sell the shares of stock composing the trust received from themselves as executors.

Furthermore, the trustees will not be surcharged for their conduct in purchasing new stock under the so-called rights to subscribe to new stock extended by certain railroad companies of which the estate was a stockholder, where the proof shows that in purchasing new stock under those rights, the trustees acted with diligence and prudence in view of the special circumstances of the estate and the discretion given them by the will.

There can be no allowance of commissions to the estate of the life tenant upon transactions during the period in which he was cotrustee, where the will specifically provided that no compensation or commissions shall be paid to any executor or trustee for services, but particularly where said trustee took no commissions on income and never asserted any claim to them; by reason of his own waiver his estate is not entitled to the statutory compensation of a trustee.

Proceeding for judicial settlement of account of trustees of testamentary trust.

*Anderson & Anderson,* for surviving trustees and for executors of the estate of William K. Vanderbilt.

*Cadwalader, Wickersham & Taft* [*George W. Wickersham,* as general guardian in person, and *Thomas B. Gilchrist* of counsel], for Gloria Laura Morgan Vanderbilt, infant.

*Roy C. Gasser,* for executors of the estate of Alfred G. Vanderbilt.

*Carrington G. Arnold,* for executors of estate of E. V. Rossiter.

*Deering & Deering,* for James R. Deering, as executor of Reginald C. Vanderbilt.

FOLEY, S.  This is a proceeding for the judicial settlement of the account of Alice G. Vanderbilt, the widow of the testator, and Chauncey M. Depew, as trustees of the trust created under the 11th article of the last will and testament of Cornelius Vanderbilt, deceased, for the benefit of his son Reginald C. Vanderbilt for life, with remainder to his issue.

The period of the account covers the entire term of administration from the death of the testator in 1899 to the death of Reginald C. Vanderbilt, the life tenant, in 1925.  The latter left surviving him as his issue two daughters, Cathleen Vanderbilt Cushing and Gloria Laura Morgan Vanderbilt.  The trust fund amounted to $5,000,000.  One-half thereof under the terms of the will ultimately vested in Mrs. Cushing.  She has approved the account by formal instrument and has accepted without question the securities turned over to her by the trustees.  George W. Wickersham, as general guardian of Gloria Laura Morgan Vanderbilt, the infant entitled to the remaining half of the trust fund, has filed objections to the account.  The estate of Reginald C. Vanderbilt appears in the proceeding and demands that commissions be allowed to him upon transactions during the period in which he acted as a cotrustee of the estate.

The items of objection filed by the general guardian of the infant may be divided into two separate classes.  The first class questions the propriety of the acceptance and retention by the trustees of certain shares of stock left by the decedent.  Some of these stocks were disposed of during the course of administration, and others were retained up to the time of the termination of the trust.  The second class of objections seeks to surcharge the trustees for their conduct in purchasing new stock under so-called " rights " to subscribe to new stock extended by certain railroad companies of which the estate was a stockholder.  The facts are undisputed. Extrinsic evidence has been received tending to show the circum-

stances surrounding the testator at the time of the execution of the will and at the time of his death. This evidence also develops the nature and extent of his investments at the date of the will and the condition of his estate at the time of his death. Computations have been submitted supplemental to the account showing in detail the operations of the trustees in the retention of the securities and the gain or loss ultimately sustained with respect to each separate investment. There is also shown the trustees' operations in transactions affecting stock rights.

Cornelius Vanderbilt, the testator, died on September 12, 1899. His will was admitted to probate in this court and is dated June 18, 1896. Reginald C. Vanderbilt, the life tenant, died September 4, 1925.

The general guardian seeks to surcharge the trustees in his objections with a total loss of approximately $230,000. This amount is computed by singling out shares of stock retained by the trustees on which a loss was ultimately sustained, and by selecting certain transactions in the exercise of stock rights which ult mately resulted in loss. The trustees, on the other hand, have established that the trust estate of the infant has been increased, by the retention of the securities, in the sum of $219,216.87 over the inventory value of the trust as originally set up. This amount has been arrived at by taking into consideration the losses on certain stocks and the larger sum of profits made upon others. The trustees have also proven that the policy adopted by them in the exercise of stock rights, with consideration of both gains and losses, has increased the estate of the infant.

I hold that all the objections of the general guardian must be overruled and the trustees must be exonerated of any misconduct or liability or pecuniary surcharge. I find that by their prudent conduct of the fund the infant will receive a substantial increase over the amount directed to be set aside in the will.

(1) The first group of objections as to the improper receipt and retention by the trustees of identical securities left by the testator requires an interpretation of the pertinent provisions of the will and particularly as to the scope of the authority and discretion vested in the trustees under its language. The specific questions raised by this set of objections may be stated as follows: Did the testator by his direction to the trustees to set aside " securities " held by him at his death limit their selection to secured bonds? Are the trustees liable for negligence because they included *stock* owned by the testator in the trust fund originally set up by them? Assuming that he authorized them to take over shares of stock in the primary formation of the trust, are they liable for disobedience

Misc. 150]     Surrogate's Court, New York County, April, 1928.

of the will in not immediately converting such shares into the reinvestments specified in the will?

The trust here involved was created by article " eleventh " of the will, the material parts of which read as follows: " I give and bequeath to my said executors   *   *   *   Twenty million dollars in securities held by me at the time of my death, to be selected out of my estate and set apart at their market value by my said executors,   *   *   *   who shall divide the same into four parcels or shares, each one of said parcels so set apart to contain, in their judgment, as nearly as may be an equal amount of each kind of securities, and shall hold one of said parcels in trust for the use of my daughter Gertrude,   *   *   *   one for my son Reginald C.   *   *   *   and shall collect and receive the income from such separate parcels, and pay the same as collected to the son or daughter for whom it is set apart, during the natural life of such sons or daughters,   *   *   *   I direct that such parcel be divided into equal shares among the children of such beneficiary, *per stirpes* and not *per capita*   *   *   *." Additional definition of the powers of the trustees is found in article " twelfth," which reads: " I authorize the trustees of the several trust funds, created under this my Will, to receive and re-invest the moneys or proceeds of stocks and bonds constituting such trust funds as they may mature, and if they think best to sell any of the same, to make sales thereof, and I authorize them to hold such funds and securities, and, from time to time, in their discretion, to change the investments of such trust funds, and I direct that they shall at all times keep the same invested in stocks and bonds of the United States or of the State of New York,   *   *   *." Other reinvestments specified are mortgage bonds of certain railroads or mortgages on real estate. The scope of this grant of power to the trustees is clarified when the extrinsic evidence as to the circumstances surrounding the testator at the time of the making of the will and as to the nature of his investments is examined. His holdings of all forms of property at the time of his death aggregated $52,000,000. The range of his investments was substantially the same at the date of execution of the will as it was at death. His stocks and bonds were largely those of the New York Central and Hudson River Railroad Company and its associated companies. The upbuilding and management of that railroad has long been an enterprise of the Vanderbilt family. At the time of the execution of the will, the evidence shows that he owned less than $6,000,000 in bonds and that the greater part of his fortune was in stocks. Subsequently, by reason of the conversion of certain shares of these stocks into bonds, pursuant to corporate action, his holdings of bonds were increased to approxi-

Surrogate's Court, New York County, April, 1928.        [Vol. 132

mately $17,500,000.   The stocks held by him at the time of his death approximated $32,000,000.   At the completion of the administration of the estate and at the time of the setting up of the trusts, the bonds available for trust purposes aggregated $16,000,000, and the stocks $21,500,000, a total of about $37,500,000.   The executors thereupon allocated these securities by a *pro rata* distribution of stocks and bonds to each of the trusts created by the various articles of the will.   To the trust involved here for the life of Reginald C. Vanderbilt, there was apportioned approximately $2,000,000 of bonds and $3,000,000 of stocks.

I can discover in the will·no support for the contention of the general guardian that by the use of the word " securities " in article " eleventh," the testator intended that his executors and trustees should have rejected shares of stock in the making up of the trusts, and included bonds only.   The term cannot be construed as having been used by the testator in the sense of mortgage bonds or secured debts.   In his direction for the formation of the trust, he must be deemed to have used the word " securities " in the vocabulary of ordinary life and not in any technical or narrow sense.   In the general usage of speech employed by men of business affairs, the word " securities " is used in its widest sense to describe the broad class of financial investments.   As so employed it imports the inclusion of stocks — common and preferred — as well as secured investments.   (See 25 Am. & Eng. Ency. of Law [2d ed.], 180; *Will of Stark,* 149 Wis. 631.)   The Century Dictionary defines " security " as " evidence of debt or of property, as a bond or a certificate of stock."   Under the mandate of the will the trustees, therefore, properly included shares of stock in the trust.

By the language he employed, the testator clearly intended that the specific shares of stock left by him might be retained by the trustees as long as they thought best.   Under article " eleventh " he gave to the latter " twenty million dollars *in securities held by me at the time of my death, to be selected out of my estate and set apart at their market value by my said executors.*"   He provided for the division into " four parcels " with as nearly as may be " an equal amount of each kind of securities."   He directed the holding of one of said " *parcels* " in trust for each of the four children named in the article.   His ultimate disposition of the remainder· refers to the manner of division of " such parcel."   In this testamentary plan he anticipated and sought to avoid the loss which would inevitably occur by the immediate liquidation, after death, of the very large blocks of stocks held by him.   Moreover, the intention to continue in the trustees a dominant interest in the various railroads finds support in the will.   The provisions of other

articles of the document emphasize the power in the trustees to take over and retain the specific stocks.

The general guardian contends, however, that even if the power existed in the trustees to accept in the first instance shares of stock as part of the trust, the provisions of article " twelfth " required the immediate sale of these stocks received from themselves as executors and compelled a reinvestment in a class of bonds and mortgages mentioned in that article. I find no such illogical limitation of power. The context of article " twelfth " simply conferred upon the trustees discretionary power of sale, and imposed restrictions on reinvestments. The terms of the will in no way commanded an immediate conversion of his original investments. The power clearly set forth in article " eleventh " to constitute the various trust funds of the stocks and bonds, which Mr. Vanderbilt owned, authorized their retention for an unlimited period, subject to the legal duty cast upon trustees for the exercise of vigilance and prudence in the protection and preservation of the fund. The testator himself laid down the course of conduct for his trustees; his intention to give them discretion as to the time of sale is clear, and there is no evidence to show that the discretion has been abused. (*Lawton* v. *Lawton*, 35 App. Div. 389.)

(2) The objections to the exercise of stock subscription rights by the trustees are also overruled. The question seems to be a novel one in the courts of this State. In New Jersey the same determination made here was rendered upon somewhat similar facts. (*Ballantine* v. *Young*, 79 N. J. Eq. 70.) I hold that the trustees, in purchasing new stock under these rights, acted with diligence and prudence in view of the special circumstances of this estate and the discretion given them by the will. I have pointed out that the power to take over and retain the stock was vested in the trustees by the testator. The power of retention necessarily included the authority to receive and keep as trust assets, stock dividends declared on the original securities. Similarly, authority to exercise rights to subscribe must be deemed to be incidental and appurtenant to the original grant of authority to the trustees. The right to subscribe to new stock of a corporation has been defined as a right to participate in preference to strangers and on equal terms with other stockholders in the privilege of contributing new capital called for by the corporation. It is " an equity that inheres in stock ownership under such circumstances as a quality inseparable from the capital interest represented by the old stock, recognized so universally as to have become axiomatic in American corporation law." (*Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247.) The special circumstances of each case must necessarily

guide a trustee in the disposition of stock rights.    In the case of substantial holdings of stock, upon which rights are issued, prudence may dictate to a trustee the exercise of rights by the purchase of the new stock, for example, in order to maintain similar voting power in the corporation.    In other cases prudence may influence him to sell the rights for cash.    The trustees here adopted a uniform policy in the exercise of these rights and in the purchase of stock under them.    Their plan was in general to sell for cash part of the rights and with the proceeds to purchase stock pursuant to the corporate privilege.    While it is not material to my conclusion, it has been shown that no loss was suffered by the trust estate because of this policy of the trustees.    Instead a substantial net gain to the infant beneficiary has resulted.    The objections of the general guardian within this group are, therefore, overruled.

(3) The allowance of commissions to the estate of Reginald C. Vanderbilt upon transactions during the period in which he was cotrustee will be denied.    The will specifically provided, under article " nineteenth," that no compensation or commissions be paid to any executor or trustee for services.    Reginald Vanderbilt acquiesced in this direction of his father.    During the period of his trusteeship he took no commissions on income and never asserted any claim to them.    Under the language of the will, therefore, and by reason of his own waiver, his estate is not entitled to the statutory compensation of a trustee.    (*Olcott* v. *Baldwin*, 190 N. Y. 99, 109; *Cook* v. *Stockwell*, 206 id. 481; *Matter of Williams*, 170 N. Y. Supp. 80.)    Submit decree on notice in accordance with this decision.