In the Matter of the Estate of JOHN M. BLAKE, Deceased.

Surrogate's Court, Kings County, March 3, 1933.

*King, Barr & Robbins,* for the trustee.

*Wrenn & Schmid,* for Elizabeth Blake King.

*Miles McDonald,* special guardian.

WINGATE, S.   The testator died on September 18, 1927, leaving a will which was probated in this court the nineteenth of the following month.   In its " seventh " item two trusts were erected from equal parts of the residue of his estate, the first for his daughter, Louise Blake, and the second for his granddaughter, Elizabeth Blake King. Income on these trusts was payable to the respective beneficiaries for life with remainders over, with the further provision that except for certain specified sums, the income on the trust for Elizabeth should be accumulated during her minority and such accumulations paid her when she attained the age of twenty-one years.   The trustee named was Central Union Trust Company of New York which has become the Central Hanover Bank and Trust Company by merger.

On November 7, 1929, the accounts of this same fiduciary in its capacity as executor were judicially settled, and it thereafter turned over the remaining assets of the estate to itself as trustee.

On January 20, 1932, testator's granddaughter, Elizabeth Blake King, became of age, and the trustee has brought the present proceeding for a judicial settlement of its transactions in that capacity since the date of its qualification.   Objections have been interposed by Miss King and by the special guardian for an infant contingent remainderman.   Both unite in an attack upon the acts of the trustee in investing funds of the estates in certain New York Central railroad stock by the purchase of rights to subscribe and actual subscription.   Miss King also objects to the investment by the trustee of accumulated income to which she was entitled upon

attaining her majority, in securities, the maturity dates of which postdated by considerable periods the time when, under the directions of the will, she was entitled to receive such income. She further contests the reasonableness of the fees paid by the trustee to its counsel on this accounting.

The terms of the will respecting investments, while authorizing the retention of securities purchased by the testator himself, limited future purchases by the trustee to securities which were authorized by statute, the language in this connection reading: " * * * any investment or reinvestment of any funds at any time in the hands of said Executor or of said Trustee shall be made only in such classes of investments as an executor or trustee is alone allowed by law to make."

The right of a fiduciary thus limited to expend funds of the estate in a manner expressly prohibited by the testator, was fully considered by this court in *Matter of Davison* (134 Misc. 769, at p. 774). It there said: " Under the phraseology of the will, it seems apparent that whereas testator was willing to permit the executor and trustees to hold the investments which he had himself purchased, he was not willing to grant them discretion to invest on their own account other than in securities authorized by law. It would have been quite possible for him, had he desired to do so, to have made an exception in his will to the effect that the executors should reinvest only in legal securities except that they might increase non-legal holdings in which he had invested in his lifetime. He did not give such discretion. Although he might personally have been willing to run certain risks by investing a limited amount in speculative or semi-speculative securities, *non constat* he would have been willing personally to invest a greater sum or have his trustees do so. A right to subscribe to stock is just what the term implies, namely, the privilege of entering into a contract to purchase one or more shares of the specified stock at a given price, usually less than the market price. It contemplates an additional contribution of funds to the corporate enterprise and involves an act of investment."

This determination was unanimously affirmed by the Appellate Division (230 App. Div. 867) *upon the opinion of this court*, wherefore the language quoted becomes the pronouncement of a tribunal whose decisions are here binding, with the result that even were this court of a different mind, which it most emphatically is not, it would have no option but to sustain the present objection.

The contention for a diverse result based on the allegation that at the time of the settlement of the account of the executor, a similar diversion was permitted to pass unchallenged, if seriously

advanced, which may well be doubted, possesses no possible merit. The fact that an individual may condone an assault and battery upon his person or property on one occasion, will not furnish any legal justification for a repetition of the offense at a future time. It may be noted further that at the time of the former judicial settlement this objector was an infant.

A portion of the second objection of Elizabeth Blake King respecting the propriety of the investments of accumulations of income by the trustee in securities which would not mature until a time appreciably subsequent to the date when, by the terms of the will, she was entitled to receive such accumulated income in cash, is simultaneously decided by this court in a controversy respecting the estate of Sarah Louise Blake between this same fiduciary and the identical beneficiary (146 Misc. 780). So far as the investments so made in the case at bar consisted of participation certificates in mortgages, the same considerations apply. The fiduciary was fully aware of the age of the distributee and of the date of maturity of its obligation for payment to her. In spite of this fact, on February 5, 1931, less than twelve months before its obligation to make payment to her in cash would accrue, it invested $3,000 of this money in a participation in a mortgage which would not mature until December 15, 1935; approximately five months later it placed $3,000 more in a like security whose due date was April 16, 1934, and less than four months prior to her majority, placed $200 additional of these funds in a similar obligation which would continue to be a " frozen credit " until June 1, 1936. For the reasons stated in the opinion in the Sarah Louise Blake estate, the court deems these investments unreasonable, imprudent and in violation of the obligation of the fiduciary under the will, and sustains the objections in respect thereto.

The court feels, however, that the investments in the bonds of the Chicago, Rock Island and Pacific Railway Company and of the Cleveland Union Terminal Company stand on a different basis. Whereas it is entirely true that the maturity of these bonds postdated by considerable periods the time when the beneficiary was entitled to receive payment of the accumulated income in cash, they were securities of an entirely different nature from the shares in the private mortgages hereinbefore considered. For securities of this type, a ready open market is maintained which enables a holder to realize upon them without difficulty or sacrifice of their intrinsic value. In this respect they resemble United States government bonds which are substantially equivalent to currency. In participations in mortgages on the other hand, it is a matter of common knowledge that the market is almost wholly confined to the

particular concerns by which such securities are issued, with the result that if the latter so elect, their salability may be either wholly destroyed or the price depressed out of all proportion to intrinsic value. Assuming, therefore, that the particular securities, at the time of their purchase, were legally authorized investments for trust funds, which has not been questioned, the court determines that the open market which was available for their disposal placed these securities in an entirely different situation from the mortgage participations and furnished every reason for the trustee to assume that they were capable of the ready liquidation which would be required to enable it to meet its obligations to the *cestui que trust* on January 20, 1932. The objection in this connection is, therefore, overruled.

Approaching the final question respecting the alleged extortionate amount of the fees paid the accountant's attorneys in this proceeding, the court is unimpressed with the merit of the objection. The payments for services in respect to the trust for the objector totalled $1,250, and for disbursements $52.29, which of course is a sizeable sum. Nevertheless, the total fund accounted for aggregated approximately $350,000. No evidence has been introduced on the subject of the reasonableness of the charge, the question being submitted as one of law. The court does not feel that, as a matter of law, a charge of this size is unreasonable in view of the value of the estate. This objection is, therefore, overruled.

Proceed accordingly.