In the Matter of the Accounting of RALPH G. BROWN, as Executor of HELEN C. BROWN, Deceased Trustee, and BANK OF NEW YORK AND FIFTH AVENUE BANK, as Trustee under the Will of ADDISON BROWN, Deceased.

Surrogate's Court, New York County, June 21, 1951.

*George B. Francis* for executor and trustee, petitioners.

*Lord, Day & Lord* for New York Botanical Garden, respondent.

*Herbert J. Deitz,* special guardian for Ruth S. Brown and others, infants, respondents.

COLLINS, S. The petitioners in this proceeding for the settlement of the accounts of the trustees ask a construction of the will respecting investment powers of the trustees and instructions as to their right to abandon possible interests in certain royalties. Other issues are raised by objections of the special guardian of infant contingent remaindermen.

(1) The twentieth paragraph of the will authorizes the trustees to retain any property, investments or securities turned over to them by the executor, or in their discretion to change any investments and to invest or reinvest the trust funds '' in any of the securities allowed by law as proper investments to be made by trustees; and, in addition, to invest in any good first mortgage railroad bonds free from taxation, *or in sound first preferred stocks of long established good character,* provided the investment in any securities other than those expressly allowed by statute, is requested in writing by the life beneficiaries (or their guardian) of the trust to which the moneys to be invested belong, & is approved by the trustees or trustee; but no investment shall be made in the common stock of any railroad or private corporation other than may be allowed by Statute ''. (Emphasis added.)

Petitioners ask a construction of the emphasized text relating to investment in sound first preferred stocks. The parties are agreed that the term '' first preferred '' refers to the character of the preference and not to the title which the issue bears. The court is in accord with that interpretation. What the testator

meant was that the trustees could invest in a preferred stock which was first in order of preference both as to dividends and assets. It is immaterial whether or not the stock is expressly labelled " first preferred " so long as no other class of stock has priority, or by the terms of the issue can have priority, either in payment of dividends or distribution of assets. With respect to the words " of long established good character ", the court agrees with the special guardian that they apply both to the security and the issuing company and not to the company alone. The testator said " preferred stocks of long established good character." He did not say " preferred stocks of corporations of long established good character." The testator obviously intended to refer only to seasoned securities and the trustees may invest only when the senior preferred stock has been outstanding for such period of time that it can meet the test prescribed by the testator.

(2) The special guardian objects to purchases of common stock of United States Steel Corporation and to losses sustained with respect to such purchases. Shares of stock in that corporation were owned by the testator and were divided among the four trusts. In 1929 the trustees received rights to subscribe to additional shares of stock. At the special request of the four income beneficiaries and the widow (who was then a cotrustee), the subscription rights were exercised and 20 shares were purchased for each of three trusts and 21 shares for one trust. In three of the trusts there were originally 140 shares, to which were added the 20 additional shares, while in the remaining trust the addition of 21 shares resulted in a holding of 171 shares of the stock. In the Addison Brown trust, 60 shares have been disposed of at a loss and 100 shares remain; in the Ralph Brown trust all shares were sold at a loss; in the Stanley Brown trust, 31 shares were disposed of at a loss and 140 shares are still on hand; in the Elinore B. French trust all shares are still held by the trustee.

First, as to the authority of the trustees to exercise the subscription rights. The testator authorized the retention of all investments owned by him. Indeed, he expressed a desire that the trustees continue to hold them. However, he stated that new investments could be made only in " securities allowed by law as proper investments to be made by trustees ", and he specifically forbade investment " in the common stock of any railroad or private corporation other than may be allowed by Statute."

There appears to be a difference of opinion among the authorities respecting the right of a trustee to subscribe to new shares of stock where the will authorizes the retention of the shares owned by the testator but does not empower the trustee to make new investments in shares of stock. The decisions in other jurisdictions are cited in Scott on Trusts (Vol. 2, pp. 1252, 1253) and Bogert on Trusts and Trustees (Vol. 3, § 683, p. 387). In this State the question has been discussed by Surrogate FOLEY in *Matter of Vanderbilt* (132 Misc. 150) and by Surrogate WINGATE in *Matter of Davison* (134 Misc. 769, affd. 230 App. Div. 867), *Matter of Blake* (146 Misc. 776) and *Matter of McCafferty* (147 Misc. 179).

*In Matter of Vanderbilt,* Surrogate FOLEY said: " The power of retention necessarily included the authority to receive and keep as trust assets, stock dividends declared on the original securities. Similarly, authority to exercise rights to subscribe must be deemed to be incidental and appurtenant to the original grant of authority to the trustees. The right to subscribe to new stock of a corporation has been defined as a right to participate in preference to strangers and on equal terms with other stockholders in the privilege of contributing new capital called for by the corporation." (P. 155.) He stated, however, that the " special circumstances of each case must necessarily guide a trustee in the disposition of stock rights." (Pp. 155–156.) Sometimes the exercise of rights is important in order for the trustee to maintain the same proportion of voting power in the corporation. The case before Surrogate FOLEY was one where the maintenance of voting power was necessary for the protection of the original investment. The trustees adopted a uniform policy of selling for cash part of the rights and with the proceeds purchasing stock pursuant to the privilege. The trustee was held to have the authority to exercise the subscription rights in such circumstances. The authority to exercise subscription rights in cases where it is important to preserve proportionate voting power is recognized by Professor Scott (2 Scott on Trusts, p. 1253), and by the court in *Farmers' Loan & Trust Co. v. Hewitt* (94 N. J. Eq. 65, affd. 94 N. J. Eq. 187). It would seem that in such a case, the authority is derived not so much from the text of the will as it is from the general power and duty of a trustee to protect his investment and to preserve its value. That point was recognized by the Vice Chancellor in *Farmers' Loan & Trust Co.* v. *Hewitt* (*supra*) who said that in responding to the call for new capital " the trustees are not investing, but protect-

ing their estates.'' Authority to sell part of the rights to secure funds sufficient to exercise the remaining rights is recognized in the Restatement of the Law of Trusts (§ 231, Comment e).

In *Matter of Davison* (*supra*) there was apparently no question of maintaining voting power or preserving the original investment. Surrogate WINGATE said (p. 774): '' A right to subscribe to stock is just what the term implies, namely, the privilege of entering into a contract to purchase one or more shares of the specified stock at a given price, usually less than the market price. It contemplates an additional contribution of funds to the corporate enterprise and involves an act of investment.'' The Surrogate pointed out that although the testator may have been willing to accept certain risks by investing a limited amount in an enterprise, it does not follow that he would have been willing to invest a greater sum or have his trustees do so. In *Matter of Blake* (*supra*, p. 778) and *Matter of McCafferty* (*supra*, p. 198) that decision was followed, but in the latter case, the Surrogate recognized the power of trustees to conserve an asset by exercise of subscription rights (p. 197).

Professor Bogert states the rule thus: '' While it is doubtless the duty of the trustee to take advantage of this opportunity by selling the subscription right, or by exercising it if he can legally purchase securities of the type offered, it seems dubious whether an authority to hold the old shares ought to be construed as warranting the trustee in investing trust capital in the new shares if they are not such investments as would be permissible to him, without regard to the settlor's directions. * * * That the settlor authorized leaving the value of the old shares in this corporate risk does not seem to lead to the conclusion that he was willing that twice that sum should be invested thus.'' (3 Bogert on Trusts and Trustees, p. 387.)

The rule adopted by the Restatement of the Law of Trusts is as follows: '' If the trustee can properly retain shares of a corporation and the corporation gives to the shareholders rights to subscribe for new shares, ordinarily the trustee can properly exercise the rights to subscribe to the extent to which by selling a part of them he can secure funds sufficient to exercise the remaining rights, although under the terms of the trust he could not properly make a new investment in such shares. The trustee can properly exercise all the rights by paying for the new shares out of other trust funds if at that time he could properly make a new investment in the shares to be acquired by the exercise of such rights, under the rule stated in § 227; and may also do so

under special circumstances, although he could not have made such a new investment, as for example when by the terms of the trust it was contemplated that the trustee should retain the original proportionate interest in the total number of shares of the corporation, with the voting power thereto attached.'' (Restatement, Trusts, § 231, Comment e.)

While some of the statements in the New York cases might indicate a difference of view with respect to general authority to exercise subscription rights, the decisions are not really in conflict. The decision in *Matter of Vanderbilt* (*supra*) was based upon the special circumstances of that case and it was in accord with the generally accepted view that where it is important to preserve proportionate voting power, the trustee may do so by exercising subscription rights. None of the New York decisions deny such authority to the trustee. On the other hand, all of them recognize that a power of retention, in and of itself, is not sufficient justification for commiting new trust capital to the enterprise, for as said in *Matter of Vanderbilt,* the '' special circumstances of each case must necessarily guide a trustee ''.

In the pending case there could obviously be no thought of maintaining similar voting power or of protecting the original investment. The trustees were plainly making a new investment. Not only did the will of this testator fail to authorize such an investment, but it expressly prohibited new investments in the common stock of a '' private corporation.'' The term '' private corporation '' was used in contrast with public utility corporations and was not meant to refer solely to a closely held corporation. The court is, therefore, of the view that under the text of the will of this testator, the trustees had no authority to exercise the rights to subscribe to shares of stock of United States Steel Corporation. The new investment in those shares was improper.

The court has considered a further provision of the will to which none of the counsel have referred. The twentieth paragraph contains an expression of testator's wish that no change should be made in the securities specifically bequeathed to the trustees or held by the corporate custodian at his death, and it exonerated the trustees from liability for any loss arising from the retention of such securities. That sentence also contains the following text: '' nor shall they be liable upon any sale and reinvestment made as above provided, or made with their approval, on the request of all the beneficiaries of the trust.'' Does this provision exonerate the trustees from all liability for

loss resulting from any investment, even of the character specifically forbidden, so long as the life beneficiaries request it? The court believes it does not. Counsel apparently agree with that interpretation since no one has urged that the provision is relevant. That paragraph of the will permits the trustees to make any investment authorized by law without consulting the beneficiaries, but as to investments which these trustees are empowered to purchase but which trustees generally are not permitted by law to make, it requires the trustees to await a written request from the income beneficiaries, or if any be an infant, from his guardian. In exonerating from liability for purchases " made as above provided ", the testator was referring to investments made by the trustees alone, and in exonerating them from liability for investments made at the request of the beneficiaries, he was referring to those which were expressly authorized on condition that the investment " is requested in writing " by the beneficiaries.

The trustees argue in their brief that during a prior accounting period they sold some of the shares of the stock which decedent had owned, and that in exercising the subscription rights they were merely recovering the shares previously sold and attempting to comply with the testator's express wish for retention of all his securities. However, at the hearing no proof was offered as to the fact of such sale or as to the reason therefor. The court cannot now assume that shares of stock of that corporation were heretofore sold, that the sale was contrary to the directions of the testator and that the new purchases were merely to regain the shares and to hold them as directed. There is no basis in this record for such assumptions.

Second, as to a surcharge against the trustees. Trustees are liable only for loss resulting from the unauthorized investment. (*Matter of McCafferty*, 147 Misc. 179, 199, *supra*.) It is conceded that no loss has resulted in the Elinore Brown French trust. The amount of the loss in the Ralph G. Brown trust is readily capable of computation because all of the shares in the trust were disposed of. In the other two trusts, there are on hand a greater number of shares than the trustees purchased but it also appears that the trustees disposed, at a loss, of a greater number of shares than were purchased by them by subscription. The special guardian asks the court to presume that the shares first sold were the shares purchased without authority and to surcharge the trustees accordingly. The trustees, however, have established from corporate records the exact number

of the new shares that were disposed of by them and the number still on hand. The actual loss to the trusts is the sole basis of surcharge. The trustees are to be charged only with the loss sustained as a result of the unauthorized investment and not with loss resulting from shares which they were empowered to hold. In view of the actual proof as to the shares disposed of, there is no need to indulge in presumptions. Moreover, the remaindermen have the option to claim either the entire investment made by the trustees in these shares or to claim the replacement of the original fund, but they will not be permitted to take the profits on part of the purchase and to surcharge for losses on part of it. (*Baker* v. *Disbrow,* 18 Hun 29, affd. 79 N. Y. 631; *Matter of United States Trust Co.,* 189 App. Div. 75, 81; 3 Bogert on Trusts and Trustees, § 708, pp. 453, 454.) The precise amount of the liability of the trustees in these two trusts is not capable of being fixed on the present record. If the parties cannot agree upon the amount under the rules above set forth, the court will fix the amount after submission of further proof.

The life beneficiaries are estopped to challenge the investment because they expressly requested it. The will gives them power to appoint the corpus though some of them have released their power. The beneficiaries represented by the special guardian are contingent remaindermen. The amount of the possible liability of the trustees will be fixed in the decree. Payment of the surcharge will be deferred until the termination of the respective trusts and the ascertainment of the remaindermen and their status to challenge this investment. (*Matter of Rolston,* 162 Misc. 194, 200.) Arrangement for deposit of the amount that may be chargeable against deceased fiduciary may be made in the manner directed in *Matter of Bull* (N. Y. L. J., May 23, 1941, p. 2322, col. 2); *Matter of Kertscher* (N. Y. L. J., Feb. 3, 1942, p. 517, col. 6) and *Matter of Josephthal* (N. Y. L. J., Aug. 19, 1943, p. 347, col. 6).

(3) The special guardian objects to the distributions made at age thirty to Addison Brown and Ralph G. Brown. The will reads: " To each of my sons on his becoming thirty years of age, if he has not previously foolishly lost or squandered the accumulations paid to him at his majority, or the greater part thereof, my trustees, or the survivor of them are empowered, in their or its discretion, to pay out of the principal of such son's trust fund, the sum of twenty thousand dollars ". Addison Brown attained the age of thirty years on June 30, 1924. He

received the specified sum on January 5, 1932. Ralph Brown reached the age of thirty on March 1, 1927, and received his payment on December 14, 1936.

There is no suggestion that the beneficiaries did not qualify for payment of the specified sum under the terms of the will. The guardian contends that the trustees were bound to act within a reasonable time after the beneficiary attained the age of thirty, and that failure to act within a reasonable time deprived them of further authority to make the distribution. He contends that the delays of eight and nine years were unreasonable. The guardian argues also that in view of the absence of proof as to action taken by the trustees during the period it must be presumed that they determined to exercise their discretion against making the payment.

The proof shows that these two beneficiaries were engaged in business in the western part of the United States, and that they made no request for partial distribution at the time the payment became due. The corporate trustee adopted a policy of not making such periodic payments unless the beneficiary requested it and hence no payment was made to these two beneficiaries until they called upon the trustees to make payment. Payment was made when requested. The beneficiaries had no need for the funds at the time payment became due. Their failure to demand immediate payment did not amount to a waiver of their right and the inaction of the trustees cannot, on this record, be construed as an exercise of discretion against payment. The fact that the trustees delayed consideration of the matter cannot operate to deprive the beneficiaries of their rights. They cannot be surcharged for doing ultimately that which they were required to do earlier. The objection is accordingly overruled.

(4) The parties are agreed that the estate has no interest in and no rights to royalties on the new publication described in the petition and in Schedule J of the account. The proof justifies that conclusion and the court holds that the trustee has no responsibility to assert any rights in such new publication.

Submit decree on notice settling the account accordingly.