Harold E. Koreman, S.
The trustee has filed intermediate accounts in four separate trusts created under the will of testator and has requested the following:
1. A construction of the decedent’s will to determine whether or not the trustee has the power under said will to exercise rights to subscribe for and make new investments in stock of corporations in which the trustee continues to hold stock owned by the decedent under the authority of paragraph twelfth of his will.
2. A determination whether or not the stock now held by the trustee in the Heartland Holding Corp. belongs to the principal of the trust or is distributable to the income beneficiary of the trust or is apportionable to both principal and income of the trust.
3. If such Heartland Holding Corp. stock belongs to principal, a construction of paragraphs twelfth and fourteenth of decedent’s will to determine (a) whether the trustee has the right to retain the same, and if so, (b) whether the trustee has the power to exercise rights to subscribe for additional stock of said corporation.
*114 The questions are common to all four trusts and this decision is applicable with equal effect to all of them.
The first question is answered in the affirmative. It has been .held that “ a power of retention, in and of itself, is not sufficient justification for committing new trust capital to the enterprise”. (Matter of Brown, 201 Misc. 799, 805 ; cf. Matter of Vanderbilt, 132 Misc. 150, 155.) However, the court holds that, with the power of retention as given in paragraph ‘£ Twelfth ’ ’ of the will, there is sufficient authority given in paragraph ‘ Fourteenth ’ of decedent’s will to justify the exercise of subscription rights for stock of corporations which decedent owned at the time of his death and which the trustee continues to hold. Of course, the exercise of such rights by the trustee in any given case must be “in the manner and subject to the obligations and duties of trustees.” (Matter of Durston, 297 N. Y. 64, 72.)
With respect to question number two the court determines that the stock of the Heartland Holding Corp. which was received by the trustee because of its ownership of stock in the National Commercial Bank and Trust Company belongs to the income beneficiary of the trust.
Although the resolution of the board of directors does not characterize the distribution as a “ dividend ’ ’ but rather refers to it as a “ spin off ”, I do not think the resolution is controlling on this court. It is undisputed that the cost of the stock of the Commercial Safe Deposit Corporation, which was later exchanged for the Heartland Holding Stock, was charged against undivided profits of the National Commercial Bank and Trust Company. It does not appear to me that the undivided profits which were used to purchase the shares of Commercial Safe Deposit Corporation changed character by being converted from cash to shares of stock. It is my conclusion, therefore, that the distribution of the shares of Heartland (for which the shares of Commercial Safe Deposit Corporation had been exchanged) was a distribution of earnings in the nature of a dividend.
It is contended that, should the distribution be determined to be a dividend, it is necessary to discover when the undivided profits used to purchase the stock which was exchanged for Heartland were accumulated and if it was before the creation of the trust the distribution must be regarded wholly as principal, since the undivided profits on hand in the bank when the trusts were created form part of the corpus of the trust. From the figures furnished the court, it appears that the undivided profits of the bank amounted to over $1,000,000 at the time the trusts were created and continued to increase in amount there *115 after and at all times during the period the shares of stock were purchased.
It is urged that it can be presumed the bank, in making the purchases of stock, used the undivided profits which were accumulated earliest, that is, before the trusts were created. In this connection, there was testimony by an officer of the bank that it follows a “first in, first out” rule in accounting procedures. Following such a theory, since the total cost of the stock purchased with undivided profits was less than the amount of such profits on hand when the trust was created, the entire distribution in question would go to principal.
I can find no reported case in which such a method of apportionment was used. In Scott, Law of Trusts (vol. 3, § 236.6) it is said ‘ ‘ the courts have never taken the view that the dividend should be regarded as declared wholly out of earnings which accrued prior to the creation of the trust. There is some authority, however, to the effect that the dividend should be regarded as declared out of earnings which accrued both prior and subsequent to the creation of the trust. This view has been generally rejected, and the courts have held that the dividend should be regarded as declared out of the latest earnings.” After discussing a Pennsylvania case (Stokes’ Estate [No. 1], 240 Pa. 277) in which a dividend of 16 million was declared by a corporation which had an accumulated surplus of 30 million of which 3 million had been added since the trust was created and the court held that one half of the dividend was to be treated as income, Professor Scott states that “ a similar result was reached in Matter of Osborne ” (209 N. Y. 450). The court, in that case, first held that the dividend should be divided in such proportion as the earnings since the creation of the trust bore to the total amount of the accrued earnings and that this part was to be treated as income and the balance as principal. On rehearing, however, the court held that this method of apportionment was erroneous and that the dividend should be treated as having been declared primarily out of earning’s which accrued subsequent to the creation of the trust. The court said that so much of the dividend should be retained in the corpus of the trust as was necessary to maintain that corpus unimpaired and the remainder should be awarded to the life beneficiary.”
In the Osborne case (supra) it is stated at page 477, “ Ordinary dividends, regardless of the time when the surplus out of which they are payable was accumulated, should be paid to the life beneficiary of the trust. * * * Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless *116 they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust or invested in the stock”. No contention has been made as to whether the distribution herein was an ordinary or an extraordinary one but all concerned appear to treat it as an extraordinary distribution. Regardless of the character of the distribution the result is the same, for, as stated in the memorandum supplied by the petitioner and as appears from the figures supplied in the petition, there does not appear to have been any impairment of the corpus of any of these trusts by reason of the Heartland stock distribution.
It is my opinion that, where that which is distributed was purchased with accumulated profits and never became capital and its distribution does not impair the corpus of the trust, it is unnecessary to determine when the profits used to make the purchase were accumulated, and the distribution belongs wholly to income.
The determination by the court with respect to question No. 2 renders it unnecessary to consider the third question asked by the trustee.
The allowance of the special guardian will be fixed in the decree.