BOSTON RAILROAD HOLDING COMPANY *vs.* COMMONWEALTH.

Suffolk. March 20, 1913. — September 12, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Tax,* Excise. *Corporation,* Taxation. *Words,* "Merchandise," "Securities."

"Cash in bank," consisting of the amount standing to the credit of a domestic business corporation in a national bank or a trust company, is not included in the word "merchandise" nor the word "securities" in the provision of St. 1909, c. 490, Part III, § 43, relating to the excise imposed upon the franchises of such corporations, which provides that "the said tax upon the value of the corporate franchise of a domestic business corporation, after making the deductions provided for in section forty-one, shall not exceed a tax levied at the rate aforesaid upon an amount, less said deductions, twenty per cent in excess of the value, as found by the tax commissioner, of the works, structures, real estate, machinery, underground conduits, wires and pipes, and merchandise, and of securities which if owned by a natural person resident in this Commonwealth would be liable to taxation."

MORTON, J. This is a petition under St. 1909, c. 490, Part III, § 70, and acts in amendment thereof, for the abatement of a portion of a franchise tax assessed upon the petitioner for the year 1912 and paid by it in October of that year. The case was reserved* for the full court on the pleadings and agreed facts.

The petitioner is a Massachusetts corporation incorporated by St. 1909, c. 519, as amended by St. 1910, c. 639. By force of its charter it is subject to the provisions of St. 1909, c. 490, Part III, §§ 40, 41,

---

\* By *De Courcy,* J.

42, 43, relating to the assessment and payment of taxes on the franchises of domestic business corporations. The only property which it had at the time of the assessment of the tax consisted of preferred and common stock in the Boston and Maine Railroad and $21,794.81, "cash in bank." The tax commissioner assessed the tax by determining the fair cash value of all the capital stock of the petitioner which, as provided in § 41, is to be taken as the true value of the corporate franchise,. and which he found to be $28,804,958, and deducting therefrom the value of the preferred and common stock of the Boston and Maine Railroad, being "securities which if owned by a natural person resident" here, "would not be liable to taxation," which he found to be $22,909,346, and multiplying the balance, which he found to be $5,895,612, by the rate arrived at in the manner provided in said § 43. The amount so determined was the tax paid by the petitioner.

The petitioner contends that the maximum tax for which a corporation is liable under the statutes is a tax "upon an amount . . . twenty per cent in excess of the value, as found by the tax commissioner, of the works, structures, real estate, machinery, underground conduits, wires and pipes, and merchandise, and of securities which if owned by a natural person resident in this Commonwealth would be liable to taxation" (§ 43), and that this provision not being applicable to it because it has no such property, if the contention of the Commonwealth that the "cash in bank" is not included within the description of "merchandise" or securities " is correct, it follows that the tax should have been assessed upon it at the minimum rate.

If this is not so, then it contends that the "cash in bank" is included in "merchandise" or "securities," and that the tax should have been assessed upon an amount twenty per cent in excess of the "cash in bank." The Commonwealth concedes that if the "cash in bank" comes within the term "merchandise" or "securities" then the result contended for by the petitioner follows. But it denies that it properly can be so included.

We do not think that either contention of the petitioner can be sustained.

What is to be taxed is the corporate franchise. In order to tax it, its value must first be determined. The statute accordingly provides a method for arriving at that, and declares that when the

value has been determined in the manner provided it shall be taken as the true value of the franchise (§ 41). The method provided is for the tax commissioner to ascertain from the returns or otherwise the true market value of the shares of the corporation and then to estimate therefrom the fair cash value of all the shares constituting the capital stock, and the amount so determined is declared, as we have said, for the purposes of the statute to be the true value of the corporate franchise. But obviously it would be unjust to include in such valuation for the purposes of taxation property belonging to the corporation in this or another State or country which was subject to local taxation. To do so would be in effect to cause double taxation. It also would be unjust to include securities which, if owned by a natural person resident here would not be liable to taxation. For to do so would be to indirectly subject such securities to taxation. Real estate and machinery subject to local taxation never have been included in the valuation of the franchise since the tax was instituted. For a collection of the statutes see *Farr Alpaca Co.* v. *Commonwealth,* 212 Mass. 156. Hence it is provided in § 41, paragraph "Third," as amended by St. 1910, c. 270, that "in case of a domestic business corporation, the value of the works, structures, real estate, machinery, poles, underground conduits, wires and pipes owned by it . . . subject to local taxation, and of securities which if owned by a natural person resident in this Commonwealth would not be liable to taxation; also the value of its property situated in another State or country and subject to taxation therein," shall be deducted from the value of the franchise. Manifestly, however, there can be no deduction if the corporation has no property of the kinds enumerated to be deducted, and the value of the franchise must remain as determined. It is the valuation thus determined either with or without deduction which forms the basis for the assessment. Section 43, which deals with the imposition of the tax, begins by providing that "Every corporation [what corporations are meant being defined] shall annually pay a tax upon its corporate franchise, after making the deductions provided for in section forty-one, at a rate," etc. The thing to be taxed is the franchise at the valuation determined unless abated by the deductions provided for. The twenty per cent clause is, in effect, a limitation upon the amount of the tax that otherwise would be

assessed and comes into operation only when there are works, structures, real estate, etc., to which it can be applied. The twenty per cent is purely arbitrary, like the minimum rate, and no doubt was adopted by the Legislature because when added to the value of the works, structures, real estate, machinery, etc., and merchandise and of securities liable to taxation, the amount so determined was deemed by them to be a reasonable compromise for the purpose of taxation in regard to the value of the franchise of domestic business corporations. The petitioner is not what would ordinarily be understood as a business corporation, but it is expressly made subject so far as the valuation and taxation of its franchise is concerned to the same statutory provisions. Those provisions apply to it so far as its charter and the nature of its business and the kind of property belonging to and held by it admit. For the reasons stated we are of opinion that the tax complained of was assessed in conformity with such provisions so far as applicable.

The questions now presented were not before the court in *New England & Savannah Steamship Co.* v. *Commonwealth,* 195 Mass. 385, and in *American Glue Co.* v. *Commonwealth,* 195 Mass. 528. See *Farr Alpaca Co.* v. *Commonwealth,* 212 Mass. 156. It is possible that the construction which we have given to the statute might lead to results which could not have been contemplated by the Legislature. But if so, that is a matter for the Legislature to remedy, and not for us.

The petitioner further contends that the "cash in bank" is included in the term "merchandise" or the term "securities," and that the tax should have been assessed upon an amount twenty per cent in excess of that.

' It is plain, we think, that it was not "merchandise." It does not come within any of the accepted definitions of that word: Bouvier's Law Dictionary; 20 Am. & Eng. Encyc. of Law, (2d ed.) 580; Century Dictionary; *Citizens' Bank* v. *Nantucket Steamboat Co.* 2 Story C. C. 16, 53, 54. It was not bank bills or specie, even if those might under some circumstances be called merchandise.

Neither do we think that it is included in the term "securities." It is not like money on deposit in a savings bank which is represented by a book containing the contract between the depositor

and the bank which may be fairly said to be a security. In its ordinary acceptation the word "securities" includes bonds, certificates of stock or of deposit, notes, bills of exchange and other evidences of indebtedness or of property, and not mere choses in action (25 Am. & Eng. Encyc. of Law, 180; 35 Cyc. 1283, n. 59); and it is to be noted that the statute, in declaring what personal estate shall include for the purpose of taxation, couples together "public stocks and securities," but classes by itself "money at interest" and "money." St. 1909, c. 490, Part I, § 4. The deposit book in which sums deposited in a national bank or trust company are set down (assuming that the petitioner had one, which does not appear), is more in the nature of a memorandum between the depositor and depositary than of what is ordinarily understood as an evidence of indebtedness. See 1 Morse on Banks & Banking, §§ 290, 291. The "cash in bank" was for the purposes of taxation in the nature of money on hand rather than in the nature of a security. *Gray* v. *Street Commissioners*, 138 Mass. 414.

We think that the tax was rightly assessed, and that the petition should be dismissed.

*Petition dismissed with costs.*

*C. F. Choate, (F. A. Farnham* with him,) for the petitioner.

*A. Marshall,* Assistant Attorney General, for the Commonwealth.