# KATHERINE P. HARRIS FOX

*vs.*

# CHARLES C. HARRIS et al.

*Trustees—Selection of Investments—Liability for Deprecia-
tion.*

The authority to invest and reinvest, for the purposes of a
trust, implies a direction to invest in safe securities, and the
trustee is bound to act in good faith and to exercise his discre-
tion reasonably.                                              p. 505

That testamentary trustees were directed by the will to invest
"in good, safe securities," did not involve any obligation upon
them to invest only in such securities as were included in the
trust investment list of the Supreme Bench of Baltimore City,
the quoted words not limiting the discretion ordinarily to be
exercised by a trustee not acting under direction of court.

p. 505

A direction by testator that his trustees invest "in good, safe
securities," did not preclude investments in corporate stocks.

p. 505

If testators desire investments to be supervised and con-
trolled by the courts, they have only so to direct, and in the
absence of such direction, trustees are required only to act in
good faith and to exercise their discretion reasonably, that is,
as an ordinarily prudent man would act in investing his own
money.                                                  pp. 505, 506

Trustees given by will "full power to sell or otherwise dis-
pose of" property, and "to invest and reinvest the proceeds
arising therefrom in good, safe securities," were not liable by
reason of depreciation in the value of securities in which they
made investments, they having made them in good faith, on the
advise of reputable brokers and without any pecuniary inter-
est in their selection, and they having similar investments them-
selves, they receiving no compensation for administering the
trust, and the will showing a disposition to vest them with a
large discretion.                                              p. 506

*Decided June 23rd, 1922.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

Bill by Charles C. Harris, individually, and Charles C. Harris and John B. Thomas, trustees, against Katherine P. Harris Fox, and others, praying the court to assume jurisdiction of certain trusts created by will, to construe the will, and for other relief. From a decree dismissing a cross-bill filed by said named defendant, she appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Robert R. Carman,* with whom were *Keech, Deming, Kemp & Carman* on the brief, for the appellant.

*William M. Kerr,* with whom was *John Thomas Scheu* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Dr. James H. Harris of Baltimore City, who died on or about December 12th, 1910, by his last will and testament created a trust for the benefit of his wife and seven children with certain alternative beneficiaries in the event of the death of certain children, and appointed Charles C. Harris, his eldest son, and John B. Thomas, husband of his eldest daughter, trustees. This son and daughter were the only children by his first wife. In this trust was included all testator's property of every kind except household furniture. The trust was to continue for the life of the widow and "until such time as in their (the trustees') judgment it is to the advantage of all interested to sell the real estate of which I may die seized and possessed, the net income in the meantime to be divided into seven equal parts, one of which parts I direct shall be paid over to each of my seven children, Charles C. Harris, Effie P. Thomas, M. Alice Jenkins, James Edward

Harris, Nannie G. Darby, Ella H. Steel and John C. Harris, or their heirs," and during the life of the widow, she was to have the entire net income. The will further directs the trustees "immediately upon a sale of my real estate by them to divide the proceeds arising therefrom as well as all other property which may come into their hands, into seven equal parts." Two of these parts were then to go absolutely to his eldest children, Charles C. Harris and Effie P. Thomas, respectively, and as to the other five parts the trust was to continue during the respective lives of his other five children. After their respective deaths, their respective portions were to go absolutely to their respective children or to some one child or person specifically mentioned. The portion of his son, James Edward Harris, after his death, was to go to his daughter, Katherine H. Harris, who married Francis J. Fox, and who is the plaintiff in the cross-bill filed in this case.

The power given the trustees as to sale and re-investment of the property is as follows:

> "They shall have full power to sell or dispose of all my property, real, personal and mixed, and to invest and reinvest the proceeds arising therefrom in good, safe securities."

The same persons named as trustees were also appointed executors.

Elizabeth A. Harris, the widow, died on or about January 18th, 1918, and James Edward Harris on or about April 8th, 1913.

The personal property distributed by the executors to the trustees, which had been held by the testator, consisted of a mortgage of $1,400; a $300 bond United Ry. Funding 5's, appraised at $249; 20 shares of stock of Piedmont Land and Manufacturing Company of Roanoke, Va., appraised at $10; 10 shares of stock of Baltimore Investment Company, appraised as without value; 10 shares of preferred stock of Baltimore Pearl Hominy Co., and 5 shares of common stock of said company, appraised at $10; and $4,639.67 in cash.

The real estate consisted of eight lots, some of them improved, all situated in the town of Harrisonburg, Virginia.

In addition to the above there appears to have come into the hands of said trustees 1 68/100 shares of the common stock of the Consolidated Coal Company, as stock dividend; a $250 scrip certificate of preferred stock dividend of Baltimore Pearl Hominy Company; and 39 shares, holders' rights to subscribe to the preferred tock of the Houston Oil Company.

On April 28th, 1920, Charles C. Harris, individually, and Charles C. Harris and John B. Thomas as trustees, filed a bill of complaint, in which the other parties in interest were named as defendants, alleging, among other things that the widow was dead; that the trustees had sold all the real estate; setting out all the investments then held by them, and praying the court to assume jurisdiction of the trusts created by the will, to interpret the will, to supervise the distribution of the estate, and to advise and direct the trustees in the execution and administration of the several trusts.

All the defendants answered, and all admitted the facts stated in the bill and consented to the granting of the relief prayed, except Katherine P. Harris Fox, the appellant. She substantially admitted all the facts, but averred the investments made by the trustees were recklessly and improvidently made in securities of a highly speculative nature, and that most of them had resulted in heavy losses to the estate, and that in making said investments the trustees violated the duty imposed upon them and the confidence reposed in them by the testator. Subsequently she filed a petition asking leave to file a cross-bill. On August 30th, 1920, the cross-bill was filed, with allegations substantially the same as in her answer, and asking for process against the trustees and all the other parties in interest, and praying that before distribution of the assets of the estate the trustees be required to make good the losses resulting from improper investments. The answer of Charles C. Harris, individually, and of the

trustees, averred, among other things, that in making invest-
ments the trustees only exercised the power conferred upon
them by the testator; that they had no personal interest in the
said purchases and received no benefit, and would receive
none therefrom, excepting such only as might be enjoyed by
the said Charles C. Harris, individually, as a beneficiary
under the will; that said purchases were made in good faith
by the trustees, and in the honest and reasonable exercise of
their judgment and discretion under the authority conferred
upon them by the will, and therefore they are not bound or
liable for any alleged loss or losses occasioned by depreciation
in the value of the securities purchased; they also deny the
authority or right of the court, under all the circumstances
of the case, to order or direct a sale of said securities only
for the purpose of ascertaining the alleged loss or losses from
depreciation, as prayed in the cross-bill.

All the other defendants in their answers repudiate the
action of the plaintiff in filing the cross-bill, and express
entire confidence in the trustees and satisfaction with their
management of the estate.

Testimony was taken, and at the conclusion thereof the
learned court below dismissed the cross-bill, and from that
decree this appeal was taken.

Before considering the facts of the case, it may be well
to review the law as established in this State, and in many
other jurisdictions, in reference to the discretion permitted
to testamentary trustees in making investments under powers
contained in wills, and the rules as to responsibility for losses
where the discretion given is exercised reasonably and in good
faith.

In *Gray* v. *Lynch,* 8 Gill, 403, the will authorized invest-
ment in "some safe and profitable stock." They invested
money in the old United States Bank, and when Congress
refused to renew the charter of the bank, the trustees invested
the same amount in the new United States Bank at Phila-
delphia, which subsequently failed. In that case DORSEY.

C. J., quotes with approval from a number of authorities as follows: In *Thompson* v. *Brown,* 4 Johns Ch. R. (N. Y.) 628, Chancellor Kent said: "This court has always treated trustees, acting in good faith with great tenderness." In *Knight* v. *The Earl of Plymouth,* 1 Dickens, 126, it was said: "A trustee having in his hands a considerable sum of money, places it out for the benefit of the *cestui que trust,* in the funds which afterwards sink in their value, or on a security, at the time apparently good, and which afterwards turns out not to be so, was there ever an instance of the trustees being made to answer for the actual sums so placed out? I answer no. If there was no *mala fides,* nothing wilful in the conduct of the trustee, the court will always favor him. For as a trust is an office necessary in the concerns between man and man, and which, if faithfully discharged, is attended with no small degree of trouble and anxiety, it is an act of great kindness in any one to accept it. To add hazard or risk to that trouble, would be a manifest hardship, and would be deterring everyone from accepting so necessary an office." Lord Eldon, in *Massey* v. *Banner,* 1 Jac. & Walk. 241, said: "Trustees, agents, &c., are expected to take the same care of the trust funds as a reasonable attention to their own affairs would dictate to them to take of their own property." Chancellor Kent, in *Osgood* v. *Franklin,* 2 John Ch. Rep. 1, said: "A trustee is not chargeable with more than he has received of the trust estate, unless there is evidence of very gross negligence, amounting to wilful default." Again, quoting from Justice Story: "The true result of the considerations here suggested, would seem to be, that where a trustee has acted with good faith in the exercise of a fair discretion, and in the same manner as he would ordinarily do in regard to his own property, he ought not to be held responsible for any losses accruing in the management of the trust property."

In *McCoy* v. *Horwitz, Admr. c. t. a.,* 62 Md. 183, the testator appointed his wife and son executors, and directed that there should be paid to each of his four grandsons the sum of $1,000 upon his arrival at the age of twenty-one years,

and that his executors should set aside some security or asset of his, valued by them at $4,000 (with power to them and their successors to invest and re-invest and sell), the income from which should be applied for the uses and support of said grandsons during their minority, the principal to be paid to them as they respectively attained the age of twenty-one years. The son renounced and the widow administered alone. Instead of selecting investments already in the estate, she invested $4,000 in gas stock, and said stock having shrunk in value to about one-third of the amount invested, one of the grandsons, after the death of the administratrix, sought to hold her estate for the loss.

It was admitted that the administratrix had acted in good faith in purchasing the stock. This Court, after commenting on the confidence reposed in his wife's judgment and discretion manifest from the entire will, and upon the admission of good faith on her part, said: "Unless there be some rule of law operative in Maryland to fetter her discretion, notwithstanding its honest exercise, and make that honest act a breach of trust, the decree of the court below dismissing the bill must be sustained. The general rule applying to discretionary trusts is, that if trustees exercise discretionary powers conferred on them in good faith and without fraud or collusion, courts of equity will not undertake to control their discretion. *Perry on Trusts,* secs. 510 and 511. * * * In respect to the rule regulating the investment of trust funds, the same author says in secs. 452 and 460, that if there are special directions in the instrument creating the trust as to the kind of securities in which trust funds shall be invested, those directions must be followed; but that, in the absence of such directions and powers, the trustee must be governed by the statute law or rules of the court in the State where the trust is to be executed; and if there be no such law or rules of court, then they are to be guided by sound discretion and fair dealing or good faith. The authorities cited are all English, and this court has declared that the English rule has never been

adopted in this State; because there is no law or rule of court, of general operation, which regulates the matter. *Gray* v. *Lynch,* 8 Gill, 405; *Evans* v. *Iglehart,* 6 G. & J. 192. * * * The general rules for equity practice recently promulgated by this court, under constitutional authority, make no provision on this subject. In *Gray* v. *Lynch,* 8 Gill, 419, the question was whether the trustees should be held liable for investments in bank stock of the United States Bank, which failed; and the court held they were not answerable for the loss; and that it would be grossly inequitable to charge them with it. The court said such investment was analogically justified by the Act of 1831, ch. 315, respecting investments by administrators and guardians under order of the orphans' court, which authorized investment in 'bank stock or any other good security.' That provision still exists and forms the 237th section of article 93 of the Code (Bagby's Code, art. 93, sec. 242), and supplies the same analogical justification in this case, of the investment made in gas stock; which, when bought, was probably deemed quite as safe and profitable an investment as any which could have been selected. * * * Too much caution cannot be exercised by trustees in the investment of funds confided to their management, but when a discretion is clearly given and its exercise is conceded to have been honest and with fairest intent, a court of equity will not charge such trustee, who is equally faultless, with the results of an honest mistake in judgment."

In *Gilbert* v. *Kolb,* 85 Md., at page 634, the rule is thus stated (the authority under the will being to invest in some "safe security or securities"): "Where the testator has selected a particular person as trustee, and has clothed him with a discretion in regard to making investments, and confided in this behalf to his judgment and integrity, and such trustee in good faith, and with diligence, makes an investment of trust funds, strictly in accordance with the powers conferred upon him, or in any way that a court of equity would have sanctioned at the time, if advised of the circum-

stances as the trustee then knew or honestly believed them to be, he will be exonerated should a loss ensue, though he failed to invoke the guidance of the court, or to procure its subsequent ratification of the step he took."

In that case the trustee was held responsible for the loss because he did not act in good faith, and the investment was not a judicious investment, made in the exercise of a fair discretion, such an one as a prudent man would have made dealing with his own affairs. As executor he sold real estate for more than its value, being personally interested as residuary legatee in getting the highest price possible for it, and took a mortgage on it and a second mortgage on another small property of little value for the full purchase price, the security, according to the great weight of the testimony, being less than the amount invested ($3,500), and the margin at the highest valuation being only about $400, and turned this investment over to himself as trustee without making any real investigation of the value of the property on which he took the second mortgage. See also 39 *Cyc.* pages 316 and 317 and notes—and pages 394 and 395.

The difference between the responsibility for losses of conventional trustees appointed by the court, or acting under the jurisdiction of a court, and testamentary trustees, is clearly stated in *Gilbert* v. *Kolb, supra.*

The contention of appellant in the present case is that if an intention on the part of the testator to give the executors discretionary powers in making investments can be read into the will, such discretion is limited by the use of the words "good, safe securities," and she argues that these words imply practically such securities as are included in the trust list of the Supreme Bench of Baltimore City. And on this theory she offers two witnesses, Mr. John Duvall Howard, who describes himself as a bond broker, and Mr. George A. Colston, a bond and stock broker.

These witnesses said they did not think any investment in stock of a corporation could be classed as a good, safe invest-

ment, as the value of stock depended upon the prosperity or
lack of success of the corporation. Holding this view, they
said the investments by the trustees in stock, of which there
were several, were not good, safe investments, at the time they
were made (and of course they must be considered as of that
date). Three of these they characterized as speculative secur-
ities, including Baltimore & Ohio Railroad common stock.
It is to be noted in passing that as to the other two stocks
classed as speculative, and which seem to be the most open
to such a description, the loss by depreciation in market
value in the one case was $491.25 and the gain by apprecia-
tion in the other was $852.16, so that the estate was ahead as
the net result of these two investments. The principal shrink-
age in market values was in Baltimore & Ohio stock and in
two issues of bonds of the United Railways, viz: funding 5's
and income 4's, which these witnesses also characterized as
speculative and not good, safe securities. But on the other
hand the uncontradicted testimony of appellees is that all
the securities they bought were purchased through brokers
who were admitted by appellant and her witnesses to be
highly reputable, and that in every case the brokers were told
that the investments were for trust funds, and with that in-
formation they represented the securities as being safe and
appropriate for that purpose; that the trustees invested their
personal funds in like securities and continued to hold them,
as they did those purchased for the estate, and that in buying
them for the estate they had in view only the best interests
of the estate; that they made no personal profit out of these
transactions. It further appears that their services to the
estate were without commissions or compensation of any kind.
Indeed it is freely conceded by appellant that the trustees
acted with the utmost good faith and disinterestedness. We
are not impressed by the contention of appellant that stocks
are not securities within the meaning of the language used by
the testator. They have been recognized as securities both

by the Legislature and by the Court.  Code, art. 93, sec. 242;
*Gray* v. *Lynch, supra; McCoy* v. *Horwitz, supra.*

In *Gray* v. *Lynch,* it was held that, analogically, a testa-
mentary trustee was justified, by the above provision of the
Legislature in reference to executors and administrators in-
vesting in bank stocks, and this analogy was extended in
*McCoy* v. *Horwitz* so as to justify the purchase of gas stock.
Nor do we agree with appellant's contention that the use of
the words "good, safe securities" limited the trustees to such
investments as are authorized by the trust investment list of
the Supreme Bench of Baltimore City; or indeed, that these
words had any special significance.  The authority to invest
and re-invest for the purposes of a trust, without the use of
such words, implies a direction to invest in safe securities,
and the discretion is no more limited in one case than in the
other.  In either case the trustee is bound to act in good faith
and to exercise his discretion reasonably.

The Maryland cases hereinbefore cited sufficiently answer
both of appellant's contentions.  We must not be understood
as approving for trust purposes the investments made by
appellees.  That is not what the court below was asked to
do in the bill filed by appellees.  It was asked to take jurisdic-
tion for the purpose of directing the distribution of the estate
as it *then existed,* and to direct the future administration of
the unexecuted trusts.  In the investments already made the
trustee acted under the power contained in the will.  It is
hardly conceivable that any court would authorize some, at
least, of these investments; and, in our opinion, the brokers
who recommended them as suitable for trust investments,
were highly culpable.

But that is not the question we have to decide.  The dis-
cretion in this case was in the trustees and not in any court.
If testators desire investments to be supervised and controlled
by courts, they have only to direct that trusts created by them
shall be administered under the jurisdiction of courts of
equity.  There being no such direction in this case, we are

confined to a single inquiry, viz: Have the trustees acted in good faith and exercised their discretion reasonably? In other words, have they acted as an ordinarily prudent man would act in investing his own money? This is the test in Maryland and in most jurisdictions, when the question involved is the responsibility for losses of testamentary trustees invested with discretion to make investments. *Gilbert* v. *Kolb, supra.* It is impossible to read the will without reaching the conclusion that the testator had full confidence in the judgment of the trustees whom he appointed, and meant to invest them with a large discretion. See *McCoy* v. *Horwitz, supra.* One of the evidences of this confidence is the fact that he left to them absolutely the decision when the estate should be distributed, after the death of his widow, by the discretion which he gave them in reference to the time of sale of the real estate.

Bearing this in mind, and taking into consideration also the uncontradicted testimony as to the care they exercised in obtaining advice from those who should be best qualified to advise in regard to the value of securities, and their entire good faith and disinterestedness through a long period of service, during which they acted for the family, apparently without thought of compensation or personal gain, except in so far as they were interested with all the other members of the family in the management of the estate in a manner most advantageous to all of them, we are unable to say they so far failed to meet the well established test that they ought to be made to suffer because of losses due to innocent mistakes of judgment.

*Decree affirmed, with costs to appellees.*