City Bank Farmers Trust Company et al., Trustees (Estate of Frederic E. Lewis) *vs.* Mary Russell Lewis et als.

Maltbie, C. J., Hinman, Banks, Avery and Brown, Js.

Argued December 3d, 1936—decided January 8th, 1937.

*Sheldon B. Smith,* with whom, on the brief, was *Robert B. Devine,* for the plaintiffs.

*Norris E. Pierson,* for defendant *Norris E. Pierson,* guardian ad litem.

*Joseph W. Drake,* of New York, with whom, on the brief, was *Sanford H. E. Freund,* for the defendants Mary Russell Lewis et als.

HINMAN, J. The will of Frederic E. Lewis, a resident of Ridgefield, who died February 26th, 1919, was dated February 13th, 1919, and admitted to probate March 27th, 1919. It gave all of the testator's property, after payment of debts, taxes, and certain legacies, to trustees to hold, invest and keep invested for the use and benefit of his wife and two sons, during their lives, under detailed provisions not important to the present inquiry, except as hereinafter stated. One of the named trustees declined to accept the trust and the testator's widow was appointed substitute trustee. In 1934 the other trustee died and the named plaintiff was appointed in his stead. Life beneficiaries of the trusts have requested and demanded of the trustees that they invest and reinvest a substantial portion of the trust funds in common stocks, and the latter have brought this action for a construction of the provisions of the will pertaining to their powers concerning investments, especially Article Fifth, which is as follows: "I authorize and empower my trustees, as hereinafter named and appointed, the survivor and successors of them, to invest and reinvest my personal estate and the proceeds of the sale of my real estate, in bonds, secured by first mortgages upon real estate, or in first mortgage bonds of any railroad or other corporation in the United States paying dividends on its stock or in such other securities besides those recognized by law as they may consider safe, without any restriction whatsoever, and expressly direct that

neither of them are to be responsible or liable for or charged with any loss or depreciation that may arise from such securities or any other securities I may leave at my decease, or which may form part of any trust created hereby."

The questions propounded upon this reservation are: 1. May the plaintiffs, as trustees, under the said last will and testament, invest trust funds in any form of investment not permitted under the statutes regulating investments of trust funds? 2. Does the said last will and testament authorize the plaintiffs, as trustees, to exercise any power to choose for investment, forms of investment not falling within the types specified in the statutes regulating the investment of trust funds? 3. Is the power of the trustees to invest in forms of investment not falling within the statutes regulating the investment of trust funds limited in any degree by said last will and testament? 4. Does the term "securities" as used by the testator in Paragraph Fifth of said last will and testament connote securities in the general sense and thereby include bonds, debentures, preferred stocks and common stocks? 5. Is the term "securities" as used by the testator in Paragraph Fifth of said last will and testament used in a restricted sense to connote only such promises for payment as are secured by a pledge of collateral?

The main issue is as to the intent to be attributed to the testator by his use in Article Fifth of the words, "in such other securities besides those recognized by law as they may consider safe, without any restriction whatsoever." It is obvious that he intended to relieve his trustees from adherence to the investments of trust funds provided for by statute, General Statutes, 1930, §§ 4836, 4837, 3995 et seq. (General Statutes, 1918, §§ 4903, 4904, 3972 et seq.), and to leave open to their choice such "securities," other than those in

which investment is so authorized by statute, as they, in the proper exercise of their discretion, consider safe. A grant of discretion to choose from among statutory legal investments would be a useless formality —the trustees having such power without the aid of the testator; if he confers discretion upon them and especially, as here, "without any restriction whatsoever," he should be considered as intending to add to the trustees' normal powers. 3 Bogert, Trusts & Trustees, p. 2046, § 682. We are unable to accept as sound the suggestion advanced on behalf of the remaindermen that an intent is manifested to limit this choice to investments similar to those specifically mentioned.

The determinative consideration is the meaning to be accorded to the word "securities" as therein employed and the intention consequently expressed as to the scope of selection of investments of the trust funds; specifically, as the questions are framed, whether it connotes "securities in the general sense and thereby includes bonds, debentures, preferred stocks and common stocks," or "only such promises for payment as are secured by a pledge of collateral." The primary and usual meaning of a word is to be given it unless the testator's use of it in another and reasonable sense is so clearly indicated, upon examination of the entire will, as to overcome its ordinary signification and satisfactorily establish the unusual meaning contended for. *Mosle* v. *Goodrich,* 94 Conn. 426, 109 Atl. 166; *Bartlett* v. *Sears,* 81 Conn. 34, 39, 70 Atl. 33. The lexicographical definition of "security," in the sense here involved, is "an evidence of debt or of property, as a bond, stock certificate, or other instrument, etc.; a document giving the holder the right to demand and receive property not in his possession." Webster's New International Dictionary (2d Ed.). While the authorities are not in entire agreement as to the

breadth of the meaning of the term as applied to investments, some English decisions and a few in this country limiting its scope to obligations secured by collateral, the prevailing conception is in general accord with the definition above quoted, with the broad significance there expressed, and we believe this to be its meaning in ordinary acceptation.

In *Jennings* v. *Davis*, 31 Conn. 134, 139, we recognized that "bills of exchange, bonds for the payment of money, and promissory notes, are in the popular conception of the term 'securities' for money." "In its ordinary acceptation the word 'securities' includes bonds, certificates of stock or of deposit, notes, bills of exchange and other evidences of indebtedness or of property. . . ." *Boston Railroad Holding Co.* v. *Commonwealth*, 215 Mass. 493, 497, 102 N. E. 650, 651. "The word 'securities,' in its broadest sense, includes not only bonds and other promises to pay money but also evidences of property such as corporate stocks." *Rosenthal* v. *Brown*, 247 N. Y. 479, 481, 160 N. E. 921. "While the word 'securities,' construed strictly, does not cover corporate stock, but rather bonds or evidences of debt, it has undoubtedly acquired a much broader meaning in general usage. It is said in 25 Am. & Eng. Ency. of Law (2d Ed.) at page 180, 'The term in its broadest sense embraces bonds, certificates of stock, promissory notes, bills of exchange, etc. . . .' Indeed it may be said, we think, to be a matter of common knowledge that the word is generally used in this broad sense." *Will of Stark*, 149 Wis. 631, 657, 134 N. W. 389, 399; *Estate of Pierce*, 177 Wis. 104, 110, 188 N. W. 78, 80; *Fox* v. *Harris*, 141 Md. 495, 504, 119 Atl. 256, 26 A. L. R. 806, 811; *Peaslee* v. *Rounds*, 77 N. H. 544, 94 Atl. 263, 265; Words & Phrases (4th Series) Vol. 3, p. 459, (3d Series) Vol. 6, p. 998. "In his direction for the formation of the trust, [the tes-

tator] must be deemed to have used the word 'securities' in the vocabulary of ordinary life, and not in any technical or narrow sense. In the general usage of speech employed by men of business affairs, the word 'securities' is used in its widest sense to describe the broad class of financial investments. As so employed it imports the inclusion of stocks—common and preferred—as well as secured investments." *In re Vanderbilt's Estate*, 229 N. Y. Sup. 631, 635.

*Irving Trust Co.* v. *Natica* (1935) 284 N. Y. Sup. 343, involved a provision in a trust indenture quite similar to that which we are construing. It empowered the trustee to invest the proceeds of authorized sales of trust property in bonds secured by mortgage on real estate, or in bonds or preferred stock of railroads approved by the trustee and another named person, "or in such other personal securities as may be approved by them as investments," they to "be allowed to exercise their entire discretion in the premises without liability to the parties hereto in case of loss." "Personal securities" was held equivalent to "securities," the meaning of which "has been passed upon fully and is no different from that employed by ordinary laymen in using the word. . . . The courts have included in that term, stocks of all sorts." (p. 349)

Preponderance of authority supports the summation in the American Law Institute Restatement of the Law of Trusts, Vol. 1, § 227, Comment *u* (p. 657): "A provision in the terms of the trust authorizing the trustee to invest in 'securities' is ordinarily interpreted as broad enough to include not merely secured obligations but also investments such as shares of stock or debentures. An authorization to invest in securities, however, does not of itself empower the trustee to make an investment which would not be made by a prudent man dealing with his own property and

having primarily in view the preservation of the trust estate and the amount and regularity of the income to be derived." Confirmation of this interpretation of the term as employed in the ordinary vocabulary of business life is afforded by phraseology in our own statutes. For example, in § 4836 of the General Statutes investment of trust funds is authorized, *inter alia,* "in any bonds, stocks or other securities in which savings banks in this state may be authorized by law to invest," and § 4837 authorizes trustees, unless otherwise ordered or directed as therein provided, to keep trust funds "invested in the securities received by them." See also General Statutes, Cum. Sup. 1935, § 1532c.

The concluding provision of Article Fifth relieves the trustees from liability for any loss or depreciation arising from not only investments which they may have made of trust funds but also "any other securities I may leave at my decease, or which may form part of any trust created thereby." That the term "securities" is there used in the broad sense above indicated is evinced by reference to the make-up of the assets of the decedent's estate. The trustees, under Article Second of the will, were authorized to place in any trust fund "any portion of my . . . property as is already invested, in such form of investment as it may be at the time of my decease." The stipulated facts show that, at the date the trusts were set up, of those assets of the decedent's estate which made up the principal of the trusts more than 45 per cent. were in common stocks, more than 33 per cent. in national bank stocks, and the aggregate of obligations secured by collateral amounted to a very small percentage of the total. Another significant circumstance, disclosed by the will itself, is that the two trustees named therein

were friends of the testator, to whom he bequeathed $50,000 each, and his confidence in whom is manifested, in addition to the provisions in Article Fifth, by a request and direction, in Article Seventh, "that no bonds or other security be required of them or either of them in any capacity or in any jurisdiction on which they may be called upon to act."

We do not regard the expression in Article Fourth authorizing payment of legacies in any of the "securities or stocks, or other property I may leave at my decease," immediately followed as it is by "property or securities" employed in the same connotation, as calling for the narrow interpretation of "securities" in that Article or elsewhere in the will, nor do we attach such significance to the provision in Article Sixth relieving the trustees from setting aside any part of income as a sinking fund to absorb premium "in case of securities taken or purchased at a premium" or from making "any other provision for possible depreciation in the value of the securities constituting the trust fund by reason of approaching maturity of said securities or otherwise." The term "securities" of course includes bonds, to which amortization would be appropriate (*Curtis* v. *Osborn*, 79 Conn. 555, 560, 65 Atl. 968), and so would be the provision excusing it; but this Article also obviates any anticipatory provision for depreciation in value of any constituents of the trust fund, not only by reason of approaching maturity but also "otherwise," and is thus adapted to the broader definition. We construe the term "securities" as used in Article Fifth to "include bonds, debentures, preferred stocks and common stocks" (Question 4) rather than as connoting "only such provisions for payment as are secured by a pledge of collateral" (Question 5).

Our answers are: to Questions 1, 2, and 4, Yes; to 3 and 5, No.

No costs will be taxed in this court.

In this opinion the other judges concurred.