EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Executor of the Last Will and Testament of WILLIAM MARSHALL, deceased,

*vs.*

ANNIE HIRST MARSHALL, CHARLES HIRST MARSHALL, and THE TRUSTEES OF THE PROTESTANT EPISCOPAL CHURCH OF THE DIOCESE OF DELAWARE, a corporation of the State of Delaware.

*New Castle, Dec. 31, 1940.*

*Charles F. Richards,* of the firm of Richards, Layton & Finger, for complainant.

*Alexander L. Nichols,* (of the office of Hugh M. Morris), for trustees of Protestant Episcopal Church of Delaware.

*Harold B. Howard,* of the firm of Hering, Morris, James & Hitchens, for Annie Hirst Marshall and Charles Hirst Marshall.

THE CHANCELLOR: This is a bill to construe the last will and testament of William Marshall, deceased; and, also, for instructions to the executor therein named, with respect to the proper distribution of the property of the decedent.

Item two of his will gave and bequeathed "unto The Trustees of 'The Protestant Episcopal Church of the Diocese of Delaware' * * *, securities I may own at the time of my death, amounting to the sum of Seven Thousand Dollars ($7,000.00). In trust, and to be known as 'The Mary A. Marshall Trust Fund,' * * *."

In the same item, the trustees of the Protestant Episcopal Church were given authority "to call in, invest and re-invest the same from time to time as may become necessary or desirable." The precise purpose of that trust appears in the statement of facts preceding this opinion, but it is not material to the decision of this case.

At the time of the testator's death he owned certain shares of corporate stock having an appraised value of

$5,012.50. He was, also, the assignee or grantee in certain so-called "Mineral Deeds" and in certain instruments designated as "Sale of Oil and Gas Royalties"; all of which he had acquired some years after the execution of his will. The value of these various property rights or interests does not appear, but if they can be classed as "securities," it is conceded that they must be assigned and delivered to the trustees of the Protestant Episcopal Church in partial satisfaction of the legacy bequeathed to them by item two of the testator's will. But whether they are "securities," or whether they are mere interests in real estate, and, therefore, pass under the residuary clause of his will is the question to be determined.

Strictly and technically, the word "security," when used in connection with matters of a pecuniary nature, may, perhaps, mean "that which renders a matter sure; an instrument which renders certain the performance of a contract." 2 *Bouv. Law Dict.*, (*Rawle's Third Rev.*) *p.* 3032. In discussing the meaning of that word, the statement is made in *Black's Law Dictionary* that "the term is usually applied to an obligation, pledge, mortgage, deposit, lien, etc., given by a debtor to make sure the payment or performance of his debt by furnishing the creditor with the resource to be used in case of failure in the principal obligation." Strictly construed, originally the kindred word "securities" was, therefore, primarily "a general term for written assurances for payment of money; evidences of debt." *Abbott's Law Dict.* In other words, the strict primary meaning of that word was at one time confined to a secured obligation or promise to pay of some nature, and did not include either corporate stocks or mere debentures. *Scott on Trusts*, 1228; *Restatement Law of Trusts*, Vol. 1, *p.* 657; *In re Waldstein*, 160 *Misc.* 763, 291 *N. Y. S.* 697. But at the present day, by common usage, the word "securities," though standing alone and unaided by the context of the instrument in which it is used, has acquired a broader and more general meaning, and is frequently used as synonymous with words which

originally may have had quite a different meaning. *Fidelity Union Trust Co. v. Lowy*, 123 *N. J. Eq.* 90, 196 *A.* 369; *In re Vanderbilt's Estate*, 132 *Misc.* 150, 229 *N. Y. S.* 631; *City Bank Farmers Trust Co. v. Lewis*, 122 *Conn.* 384, 189 *A.* 178; 2 *Schouler on Wills*, (*6th Ed.*) 1288; 56 *C. J.* 1279, 1282. In this connection, Mr. Schouler aptly says: "Present usage gives (to that word) a generous scope far beyond its literal meaning." 2 *Schouler on Wills*, (*6th Ed.*) 1288, *supra*. Modern dictionaries have recognized this change in the meaning of the word "securities," and have defined it as "an evidence of debt or of property, as a bond, a stock certificate or other instrument, etc.; a document giving the holder the right to demand and receive property not in his possession." *Webster's New Inter. Dict.; 7 Cent. Dict.* 5460. Most courts and text writers have, therefore, held that certificates for shares of corporate stock are "securities," notwithstanding the fact that they merely represent the particular interest of the owner in the corporate capital and in its surplus assets on dissolution. *Fidelity Union Trust Co. v. Lowy*, 123 *N. J. Eq.* 90, 196 *A.* 369; *In re Vanderbilt's Estate*, 132 *Misc.* 150, 229 *N. Y. S.* 631; *In re Waldstein*, 160 *Misc.* 763, 291 *N. Y. S.* 697; *City Bank Farmers Trust Co. v. Lewis*, 122 *Conn.* 384, 189 *A.* 178; *Scott on Trusts*, 1228; *Restatement Law of Trusts, Vol.* 1, *p.* 697. This is conceded by the residuary devisees and legatees. Moreover, in reaching that conclusion, courts have necessarily and logically recognized the fact that in the ordinary vocabulary of modern life, the term "securities" is usually applied to almost any instrument which is used for the purpose of financing and promoting a business enterprise of some nature, and which is intended as an investment of a pecuniary nature. *In re Waldstein*, 160 *Misc.* 763, 291 *N. Y. S.* 697; *Fidelity Union Trust Co. v. Lowy*, 123 *N. J. Eq.* 90, 196 *A.* 369; *In re McGraw's Estate*, 337 *Pa.* 93, 10 *A.* 2d 377; *In re Vanderbilt's Estate*, 132 *Misc.* 150, 229 *N. Y. S.* 631; 56 *C. J.* 1279; see, also, *Romer, L. J., In re Rayner*, [1904] 1 *Ch.* 176. But that term does not ordinarily apply to the

evidence of title to land, as such, or to any share or interest therein. *Storm v. Waddell,* 2 *Sandf. Ch.* 494; *Pratt v. Worrell,* 66 *N. J. Eq.* 194, 57 *A.* 450; *Narragansett Mut. Fire Ins. Co. v. Burnham,* 51 *R. I.* 371, 154 *A.* 909; *First Nat. Bank v. Rawson,* 56 *Ohio App.* 388, 11 *N. E.* 2d 110; *Senior v. Braden,* 295 *U. S.* 422, 55 *S. Ct.* 800, 79 *L. Ed.* 1520, 100 *A. L. R.* 794.

Each of the instruments in question, in terms, grants, conveys and assigns to William Marshall, the grantee, an undivided fractional interest "in and to all of the oil, gas and other minerals in and under and that may be produced from" certain lands therein described and variously situated in the States of Oklahoma, Texas and Kansas. Those instruments covering lands in Oklahoma and Texas are entitled "Mineral Deeds" and are distinguished from the remaining instruments, covering lands located in the State of Kansas, mainly in the circumstance that the grant in each case is expressed to be in fee; whereas in the latter instruments, each of which is entitled "Sale of Oil and Gas Royalty," the grant is limited to a fixed term of years "and as long thereafter as oil or gas is produced" from the land therein described. The grantee's interest in each of these instruments is, however, expressly made subject to any and all prior existing leases. Thus each of the so-called "Mineral Deeds" contains the provision "this sale is made subject to any rights now existing to any lessee or assigns, under any valid and subsisting oil and gas lease of record, heretofore executed; it being understood and agreed that said grantee shall have, receive and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties and other benefits which may accrue under the terms of said lease, in so far as it covers the above described land, from and after the date hereof, precisely as if the grantee herein had been at the date of the making of said lease the owner of a similar undivided interest in and to the lands described and grantee one of the lessors therein."

The several instruments designated "Sale of Oil and Gas Royalty" are likewise limited by similar reservations, of which the following is typical:

"Said land being now under an oil and gas lease executed in favor of........................., it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes two/three-hundred-twentieth (2/320th) of all the royalty and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that two/three-hundred-twentieth (2/320th) of the money rentals, which may be paid to extend the term within which a well may be begun under the terms of said lease, is to be paid to the said grantee and in the event that the above described lease for any reason becomes cancelled or forfeited, then and in that event an undivided 2/320th of the lease interests and all future rentals and bonuses on said land for oil, gas and other mineral privileges shall be owned by the said grantee, William Marshall, owning 2/320th of all oil, gas and other minerals in and under said lands, together with 2/320th interest in all future events."

In each of these instruments, the assignment, grant or conveyance is for what appears to be a nominal consideration. Each contains an *habendum clause,* similar to that usually appearing in the ordinary real estate deed; a covenant on the part of the grantor to give such future assurance as may be necessary; a clause warranting the title conveyed; a provision permitting the redemption of the property by the assignee or grantee from unpaid mortgage liens or taxes; and each is acknowledged before a notary public, and recorded in the proper county office. Each instrument, also, gives the assignee or grantee the right of ingress and egress to and from the property for the purpose of mining, drilling, exploring and developing the lands, therein referred to, for oil, gas and other minerals. All of them were executed in the year 1936. In two of them, relating to Kansas properties, the wives of the assignors or grantors also joined as parties; in others the assignors or grantors were described as single men, while in some it does not appear whether they were married or single. It is true that all of these properties were subject to the rights of certain prior lessees to exploit and work them for the extraction and

production of gas, oil and minerals. It is, also, true that among the real primary rights acquired by William Marshall was the right to share in such bonuses, and in such gas, oil and mineral rents and royalties as might be paid by such lessees under the provisions of their leases. The operations for the production of these commodities from the lands in question were to be conducted by these lessees, and specific shares were merely to be paid to the said William Marshall; and in the two years and five months succeeding his death his executors received, as income from these properties, the sum of $910.50.

There is a slight difference in the language used in the two classes of instruments involved in this action, but it is not contended that that difference is in any sense material to its decision. These instruments are evidences of property rights acquired, but the only reasonable inference to be drawn from the language used is that all of them convey an interest in real estate, and are, therefore, not securities. Whatever the effect of the present so-called "Blue Sky" statutory provisions may be, prior decisions of the courts in the states in which these properties are located seem to support this conclusion. *United States v. Noble,* 237 *U. S.* 74, 35 *S. Ct.* 532, 59 *L. Ed.* 844; *Waggoner Estate v. Wichita County, Tex.,* 273 *U. S.* 113, 47 *S. Ct.* 271, 71 *L. Ed.* 566; *Sheffield, Tax Collector v. Hogg, et al.,* 124 *Tex.* 290, 77 *S. W. 2d,* 1021, 80 *S. W. 2d* 741; *Cuff v. Koslosky,* 165 *Okl.* 135, 25 *P. 2d* 290. The theory of these cases seems to be that oil, gas and other minerals are a part of the land, and that, while accrued rents and royalties are personal property, the right of the lessors to the future rents and royalties reserved partake of the nature of real property; and that the rights of subsequent assignees or grantees are of the same nature.

Perhaps I should, also, point out that it has been repeatedly held that land trust certificates, issued by the holder of the bare legal title under an agreement whereby the trustee is to manage the property and pay over the profits

to the equitable owners, are merely evidences of an interest in real estate, and not securities. *Narragansett Mut. Fire Ins. Co. v. Burnham*, 51 *R. I.* 371, 154 *A.* 909; *First Nat. Bank v. Rawson*, 56 *Ohio App.* 388, 11 *N. E. 2d* 110; see, also, *Senior v. Braden*, 295 *U. S.* 422, 55 *S. Ct.* 800, 79 *L. Ed.* 1520, 100 *A. L. R.* 794, *supra*.

The property rights in question, therefore, pass to Anna Hirst Marshall and Charles Hirst Marshall under the residuary clause of the testator's will, and not to the trustees of the Protestant Episcopal Church of the Diocese of Delaware under item two thereof.

A decree will be entered in accordance with this opinion.

Note. On appeal by The Trustees of the Protestant Episcopal Church, the decree entered in this cause was reversed. See 26 *Del. Ch.*, 24 *A. 2d* 327.