THE TRUSTEES OF THE PROTESTANT EPISCOPAL CHURCH OF THE DIOCESE OF DELAWARE,
Defendant Below, Appellant,

*vs.*

EQUITABLE TRUST COMPANY, Executor of the Last Will and Testament of William Marshall, Deceased,
Complainant Below,
ANNIE HIRST MARSHALL and CHARLES HIRST MARSHALL,
Defendants Below, Appellees.

*Supreme Court, On Appeal, January 20, 1942.*

428

LAYTON, C. J., RICHARDS, SPEAKMAN, and TERRY, JJ., sitting.

*Alexander L. Nichols,* for appellant.

*Harold B. Howard,* for individual appellees.

LAYTON, Chief Justice, delivering the opinion of the court:

On December 14, 1927, William Marshall executed a last will and testament, appointing Equitable Trust Company as executor. At his death on April 12, 1937, the will was proved and the executor named duly qualified. By the second item of his will the testator gave and bequeathed to the appellant "securities I may own at the time of my death amounting to the sum of Seven Thousand Dollars ($7000.00) In Trust, and to be known as 'The Mary A. Marshall Trust Fund' * * *". To Annie Hirst Marshall and Charles Hirst Marshall was given the residue of the estate in equal shares in fee simple.

At the time of his death, the testator was possessed of, *inter alia,* certificates for shares of stock in certain corporations. It is admitted that these certificates are securities. Some of the shares were sold by the executor in the course of administration; and it is conceded that the proceeds of sale applicable to the bequest together with the value of the unsold shares will not be sufficient to satisfy the legacy in trust.

The deceased, however, owned certain rights and interests evidenced by instruments denominated "Sale of Oil and Gas Royalty" and "Mineral Deed". These instruments came into the executor's possession, but they were not appraised for the reason that it was doubted whether they were properly to be classed as securities. If the legacy is to be satisfied in full, recourse must be had to some or all of these instruments. The executor filed a bill praying for a construction of the will. In an opinion, reported in *Equitable Trust Co. v. Marshall*, 25 Del. Ch. 238, 17 A. 2d 13, the Chancellor held that the instruments conveyed to the testator interests in real estate and were not securities; and that the property rights evidenced by them passed under the residuary clause of the testator's will. This appeal followed.

The instruments are twelve in number, and all of them appear to have been executed and delivered to the deceased testator in 1936. Each of the instruments, in terms, purports to convey to the deceased an undivided fractional interest "in and to all of the oil, gas and other minerals in and under and that may be produced from" the lands described, and situated variously in the states of Kansas, Texas and Oklahoma. The Kansas instruments are entitled "Sale of Oil and Gas Royalty". In each the grant is for a fixed term of years, and so long as oil or gas is produced from the land, or as in certain of the instruments, as long as oil or gas is produced in commercial quantities. In the other instruments the grant purports to be in fee simple; and in all of them the grants are made subject to all prior existing leases. The language varies, but the general effect is the same. For example, in the Oklahoma instruments there is this provision:

"This sale is subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease of record heretofore executed; it being understood and agreed that said Grantee shall have, receive and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties and other benefits which may accrue under the terms of said lease in so far as it covers the above described land from and after the date hereof * * *".

### In the other instruments it is provided:

"Said land being now under an oil and gas lease executed in favor of * * * it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes (the stated fractional interest) of all the royalty and gas rental or royalty due and to be paid under the terms of said lease."

"It is understood and agreed that the (stated fractional interest) of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in the event that the above described lease for any reason becomes cancelled or forfeited * * * an undivided (stated fractional interest) of the lease interests and all future rentals and bonuses on said land for oil, gas and other mineral privileges shall be owned by the said Grantee * * *."

Each instrument secures to the grantee the right of ingress and egress for the purpose of mining, drilling and exploring the described lands for oil, gas and other minerals, and for their removal; each contains a habendum clause, a covenant of further assurance, and a warranty of title; and each of the instruments is acknowledged before a notary public, and is recorded in the county office.

The single and narrow question is whether the instruments described are "securities" as that word is properly understood.

Formerly the word "security" has a fixed and definite meaning in law. In 2 *Bouv. Law Dict., Rawle's Third Rev.,* *p.* 3032 the word is defined as "that which renders a matter sure; an instrument which renders certain the performance of a contract." Derivation and literal interpretation suggest safety and stability arising from pledge, endorsement, deposit or other matter to which recourse may be had. Later decisions have broadened the meaning of the word. It has been held to embrace certificates for shares of stock. *In re Stark's Will,* 149 *Wis.* 631, 134 *N.W.* 389; *City Bank Farmers Trust Co. v. Lewis,* 122 *Conn.* 384, 189 *A.* 178; under Federal revenue acts, accumulative installment certificates issued by an investors' syndicate, *Willcuts v. Investors' Syndicate,* (8 *Cir.*) 57 *F.* 2d 811; and, under a corporate franchise tax act, a bank pass book evidencing savings deposits, *J. S. Lang Engineering Co. v. Commonwealth,* 231 *Mass.* 367, 120 *N.E.* 843.

In the *Matter of Vanderbilt's Estate,* 132 *Misc.* 150, 229 *N. Y. S.* 631, 635, it was said that the testator

* * * "must be deemed to have used the word 'securities' in the vocabulary of ordinary life, and not in any technical or narrow sense. In the general usage of speech employed by men of business affairs, the word 'securities' is used in its widest sense to describe the broad class of financial investments"

And in the *Matter of Waldstein,* 160 *Misc.* 763, 291 *N. Y. S.* 697, 700, the court used this language:

"Those instruments, however, secured or unsecured, which are used for the purpose of financing enterprises and promoting a distribution of rights in or obligations of such enterprises, and which are designed as a means of investment, are termed securities."

In the *Matter of Rayner* (1904) 1 *Ch.* 189, one of the law judges observed that the word "securities" was a flexible word, and that he recognized that it is widely used as a synonym for investments. In these cases, it is true, the subject of dispute was stock certificates; but the language used shows clearly a departure from the former legalistic conception of the term. And so we find in Webster's New International Dictionary that this specific significance is ascribed to the word:

"Property given or serving to render secure the enjoyment or enforcement of a right; * * * a document giving the holder the right to demand and receive property not in his possession."

In a number of states, including Kansas, Texas and Oklahoma, there are statutes, commonly known as "Blue Sky Statutes", in which the word "securities" is defined, in varying language, as including any certificate of interest in an oil, gas or mining lease. *Atwood v. State*, 135 *Tex. Cr. R.* 543, 121 *S.W.* 2d 353, *People v. Jackson*, 24 *Cal. App.* 2d 182, 74 *P.* 2d 1085, involved criminal prosecutions under such statutes. In *State v. Pullen*, 58 *R.I.* 294, 192 *A.* 473, *Busch v. Noerenberg*, 202 *Minn.* 290, 278 *N.W.* 34 and *Domestic and Foreign Petroleum Co., Ltd., v. Long*, 4 *Cal.* 2d 547, 51 *P.* 2d 73, the proceedings were of a civil nature. In these cases the several courts held, either directly, or by reference to other decisions, that the substance and not the form of a transaction is the proper test to be applied in determining its real nature, and that instruments similar in character to those under consideration were primarily evidences of shares in oil produced under oil leases, and only incidentally evidences of transfers of interests in land; and hence were securities within the purview of the statutes. These decisions must, of course, be understood as construing

statutes enacted for the protection of the general public. The statutory definitions of the word "securities" are of value only as they may be supposed to reflect the popular sense of the word.

There are decisions under tax statutes in which land trust certificates are considered as evidences of interests in the equitable ownership of land, and, therefore, an investment in real estate and not securities taxable as intangible personal property. *Senior v. Braden*, 295 *U.S.* 422, 55 *S. Ct.* 800, 79 *L. Ed.* 1520, 100 *A. L. R.* 794. See annotation to this case in 100 *A. L. R.* 804. Mr. Justice Stone, one of three dissenting justices, pointed out, however, that in every practical aspect the trust certificate holder stood in the same relationship to the land as the stockholder of a land owning corporation. In *Waggoner Estate v. Wichita County*, 273 *U.S.* 113, 47 *S. Ct.* 271, 71 *L. Ed.* 566, it was held that, under an oil lease requiring the lessees to deliver a proportion of all oil produced and saved to the lessor as royalty, the ownership of royalty oil remained in the lessor, and his interest was properly taxed as realty in the county where the land was located. These decisions, we think, are not decisive of the question.

Recourse must be had to construction. The cardinal rule is to ascertain the intention of the testator, and to give it effect if that can be done in conformity with settled rules of law. The rule requires that the testator's intention be collected from the whole will; but here the word "securities" stands alone. The context gives no clue to its meaning. The aid of technical rules and presumptions may properly be invoked.

Words and terms having in law a precise and definite meaning will be presumed to have been used in that sense unless a contrary intention clearly appears from the context. The reason for the rule does not rest upon any legal compulsion, but upon common sense and a presumed ordinary understanding of the words used. But where it is clear

that words having a particular meaning in law were not used in a legalistic sense, the courts will not necessarily give to them a restricted meaning, but will, if possible, construe them so as to effectuate the testator's intention. With greater reason, where a word, once having a definite and restricted legal meaning, has come to have, not only in law but in common usage, a broad and general meaning, the courts ought not, in disregard of realities, persist in imputing to it the former narrow and special meaning in the absence of a controlling text or admissible evidence. In such case the presumption should be indulged that the testator has used the word in its ordinary or popular sense.

The bequest to the appellant in trust was "securities I may own at the time of my death amounting to seven thousand dollars." Clearly, the testator did not have in mind specific securities, or the then value, or par value of them, nor even securities owned by him at the date of the will. His declared purpose was to create a trust fund of a certain value speaking as of the time of his death. Charitable bequests are construed liberally to carry into effect the testator's intention, and every presumption consistent with the language used will be indulged to sustain them. It may be presumed that the testator had constant knowledge of the approximate amount of his estate; and, if reliance on presumption is at all necessary, that he contemplated payment in full of the legacy in trust.

The instruments, in form, are conveyances of interests in realty. In substance, the grantees contract for a right to share in the proceeds of an enterprise conducted by others, and apart from outward appearance, the instruments are no more than written evidences of transferable rights to fixed shares of royalties in oil produced by the lessees of the lands conveyed. Practically, the grantees are in the situation of owners of shares of stock in a landholding corporation. The right of ingress and egress is conferred on the grantees, it is true; but the fractional interests con-

veyed are small; the grantees are scattered; and it is evident that they do not rely on their right of ownership in the lands, or on their own services and efforts, or expenditure of money, for expected profit. These instruments are widely used in the financing of oil, gas and mineral enterprises. They were designed as means of investment, and in popular thought and in ordinary parlance they are accepted as such.

It may be presumed, in the absence of anything to the contrary, that the testator was accustomed to use and to comprehend words as would a person of average intelligence and business understanding. In the ordinary lay mind the instruments in question are "securities"; and putting aside formalism and looking to the essential verities they are securities. So far as may be necessary the instruments are to be applied in discharge of the legacy given in trust to the appellant.

The decree of the court below is reversed.